UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**17MISC 36**

------------------------------------------------x

IN THE MATTER OF THE APPLICATION
OF CUBE INVEST GmbH FOR AN ORDER
TO TAKE DISCOVERY PURSUANT TO 28
U.S.C. §1782

     :
     :
     :
     :
     :
     :
     :

No. ___ MC ___

RECEIVED
FEB 1 - 2017
U.S.D.C. S.D.N.Y.
CASHIERS

------------------------------------------------x

## <u>CUBE INVEST GmbH's SECOND APPLICATION FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782</u>

1.      Pursuant to 28 U.S.C. § 1782 ("section 1782"), Cube Invest GmbH ("Cube") respectfully submits its Application for an order: (a) authorizing Cube to take documentary and testimonial discovery from OEP Capital Advisors, L.P. ("OEP Capital" or "Respondent"); and (b) ordering OEP Capital to provide such discovery.  All such discovery is for use in court proceedings pending before the Commercial Court of Vienna, Austria under docket number 75 Fr 13190/10h (the "Austrian Review Proceedings").  OEP Capital is not a party to those proceedings, and a proposed form of order is annexed hereto as Exhibit A.

### <u>JURISDICTION AND VENUE</u>

2.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the Application is being made in accordance with 28 U.S.C. § 1782.

3.      Venue in this District is proper pursuant to 28 U.S.C. § 1391.

### <u>THE PARTIES</u>

4.      Applicant Cube is a limited liability company registered in Austria in the Commercial Register of the Commercial Court of Vienna under FN 233810p, operating under Austrian law. On November 22, 2010, Cube initiated legal proceedings (the "Austrian Review

(20) days of service of this Order on Respondent or at such other time as may be agreed;

(C)    Respondent shall appear at a deposition and give testimony in accordance with Appendix "1" to this Order within sixty (60) days of service of this Order on Respondent or at such other time as may be agreed;

(D)    Edward W. Floyd, and any other attorneys affiliated with the law firm of Eaton & Van Winkle LLP and admitted to practice before the United States District Court for the Southern District of New York, are appointed as examiners to: (i) take depositions; (ii) obtain the requested documents and information pursuant to Appendix "1" to this Order; and (iii) to issue subpoenas to Respondent to obtain documents and testimony (in addition to the documents and testimony described by Appendix "1" to this Order) pursuant to the Federal Rules of Civil Procedure; AND

(E)    Cube is ordered to serve a copy of this Order on Respondent within five (5) days of entry of this Order and, upon such service, to file an Affidavit of Service with the Court attesting that this has been done.

**IT IS SO ORDERED.**

Dated: _____

_____
United States District Judge

# APPENDIX 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------- x
                                  :
IN THE MATTER OF THE APPLICATION  :
OF CUBE INVEST GmbH FOR AN ORDER  :
TO TAKE DISCOVERY PURSUANT TO 28  :     No. ___ MC _____
U.S.C. § 1782                     :
                                  :
                                  :
--------------------------------- x

## PRODUCTION OF DOCUMENTS

OEP Capital Advisors, L.P. ("Respondent") shall produce copies of the documents described herein no later than twenty (20) days from service upon them of the foregoing Order, at the offices of Eaton & Van Winkle LLP, located at 3 Park Avenue, 16ᵗʰ Floor, New York, New York 10016.

## DEFINITIONS AND INSTRUCTIONS

A.     Each of the Uniform Definitions in Discovery Requests which are set forth in Local Civil Rule 26.3 for the United States District Court for the Southern District of New York is, and shall be deemed to be, fully incorporated herein.

B.     "Cube" refers to the Applicant Cube Invest GmbH.

C.     "You" and "Your" refer to respondent OEP Capital Advisors, L.P.

D.     "Your Affiliated Entities" refers to any and all, past or present, corporate parents, affiliates, subsidiaries, divisions or subdivisions of OEP Capital Advisors, L.P. and/or its predecessors.

E.     "Application" refers to Cube's Application filed in the above captioned matter.

F.     "E&Y" refers to Ernst & Young and any and all parents, affiliates, subsidiaries, divisions, or subdivisions thereof.

1

G.      "Baestlein" refers to Mr. Hanno Baestlein.

H.      "Company" refers to Constantia Packaging AG, and any and all parents, affiliates, subsidiaries, divisions, or subdivisions thereof, including, for the avoidance of doubt, Belisce d.d. (Croatia).

I.      "Majority Shareholder" refers to Constantia Flexibles Group GmbH and any predecessors including, without limitation, Constantia Packaging GmbH and Sulipo Beteiligungsverwaltungs GmbH.

J.      "Restructurings" refers to any restructuring of the holding entities owning or owned by the Company (the "Restructurings"), as alleged at paragraphs 39 through 41 of the Application.

K.      "Squeeze Out" refers to the 2010 transaction pursuant to which Cube and all other minority shareholders were required to surrender their shares in the Company in return for payment for their shares from the Majority Shareholder, as alleged at, *inter alia*, paragraph 27 of the Application.

## INSTRUCTIONS

A.      These Requests are directed to every document in Your possession or subject to Your custody and control, wherever located, including without limitation those in the custody or control of Your agents, employees, representatives, accountants, attorneys, either present or former, and/or any entities subject to Your control, including Your Affiliated Entities.

B.      These Requests are to be deemed a continuing request, and documents that are responsive but are discovered subsequent to an initial production should be promptly produced in the same manner, and at the same address, as the initial production.

C.      All documents produced pursuant to these Requests shall be produced as they are

2

kept in the usual course of business, shall be identified by the title of the file in which they are located, and shall be identified as to the request in response to which they are being produced.

     D.     Each Request for a document or documents to be produced requires the production of the document in its entirety, without redaction or expurgation.

     E.     If there are no documents responsive to a category in these Requests, so state in writing.

     F.     If any document called for by these Requests is withheld under a claim of privilege, such claim should be made expressly and must state: (a) the author of the document; (b) the date of the document; (c) the subject matter of the document; (d) each person to whom an original copy of the document was sent; (e) every other person who received the document or a copy of the document; and (f) the basis for the claim of privilege.

     G.     If any document requested was, but is no longer, in your possession, custody, or control, furnish a list specifying each document and setting forth the following information: (a) the type of document; (b) the general subject matter of the document; (c) the date of the document; (d) the name(s) and address(es) of each person who prepared, received, viewed and had or has possession, custody or control of the document; (e) the disposition of the document; (f) the date or dates on which such disposition was made; and (g) the date and manner in which you can or may obtain the return of each such document.

     H.     If You are unable to locate any document requested, state all efforts that have been made to locate it and identify any individual whom you believe is likely to possess any information regarding the present location of the document.

     I.     Where an objection is made to any Request or sub-part thereof, the objection shall state with specificity as to all grounds.

## TIME PERIOD

Each Request covers the period from September 1, 2009 through December 31, 2011, unless otherwise specified.  If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a Request, You must produce the earlier document as well.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the production Request.

## DOCUMENT REQUESTS

1.      All documents and communications concerning the value of the Company, or budgets, medium term plans, business plans or any other plans concerning future earnings, turnover, profit, cash flow, EBITDA or net debt equity of the Company and any subsequent changes thereto, including without limitation, any valuation reports, analyses, opinions or calculations.

2.      All documents and communications concerning any investment by You, or Your Affiliated Entities, in the Company or in the Majority Shareholder.

3.      All communications between You, or Your Affiliated Entities, and Baestlein or any members of the supervisory board of the Company concerning the Company, the Squeeze-Out or the Restructurings.

4.      All documents concerning any meetings between You, or Your Affiliated Entities, and Baestlein or members of the supervisory board of the Company concerning the Company, the Squeeze-Out or the Restructurings.

5.      All documents and communications concerning any and all contracts, informal agreements, understandings or promises between You, or Your Affiliated Entities, and Baestlein or any members of the supervisory board of the Company, or any trusts or companies affiliated

4

with Baestlein or any members of the supervisory board of the Company, including without limitation BestLine Privatstiftung, pursuant to which Baestlein or members of the supervisory board of the Company or any trusts or companies affiliated with Baestlein or any members of the supervisory board of the Company received, or have been promised to receive, any compensation, including a direct or indirect participation in the Company.

6.      All documents and communications concerning Your acquisition of stock in the Company, or any acquisition of stock in the Company by any of Your Affiliated Entities.

7.      All communications between You, or Your Affiliated Entities, and any Company shareholders or agents, affiliates or advisors of Company shareholders.

8.      All documents and communications (including work products) exchanged between You, or Your Affiliated Entities, and E&Y concerning the Company, the Squeeze-Out, the expert opinion prepared by E&Y in connection with the Squeeze-Out, the Restructurings and all other work conducted by E&Y in connection with the acquisition of stock by You, or Your Affiliated Entities, in the Company.

9.      All communications between You, or Your Affiliated Entities, and the Company (including, without limitation, its officers, directors, employees, and supervisory board members) concerning the Squeeze Out or the Restructurings.

10.      All documents and communications concerning any sale, or contemplated sale, of any subsidiaries of the Company by You or Your Affiliated Entities or anyone else, including in particular all presentations and valuations presented to potential purchasers.

11.      All documents and communications concerning the Majority Shareholder's purchases or sales, or contemplated purchases or sales of stock in the Company.

12.     All communications between You, or Your Affiliated Entities, and the Wendel Group, or between Baestlein or any member of the supervisory board of the Company and the Wendel Group, concerning the Company, made at any time from September 1, 2009 through the present.

13.     All documents and communications concerning the value of AMAG Austria Metall AG, Duropack Holding Aktiengesellschaft, Constantia Flexibles Beteiligungs GmbH, Constantia Flexibles GmbH, Constantia Flexibles Group GmbH, Constantia Flexibles Holding GmbH, Constantia Flexibles International GmbH, Constantia Flexibles Sales GmbH; the Company; or the Majority Shareholder.

14.     All documents and communications concerning acquisitions of companies or participations by Constantia Flexibles including but not limited to Constantia Tobepal S.L., Tobepal S.L., Asaş Ambalaj Baski Sanayi ve Ticaret A.Ş., Global Pack Group Sas, Spear Inc., Spear Group Inc. and Parikh Packaging Private Limited, including without limitation valuations, share purchase agreements and financial statements for any such companies, from the time of the Squeeze Out to the present.

15.     All documents and communications concerning companies acquired, in whole or in part, by the Majority Shareholder from the time of the Squeeze Out to the present, including without limitation valuations, share purchase agreements and financial statements of any such companies, to the extent not covered by Request No. 14 above.

16.     All minutes of meetings of the Company management board or Company supervisory board for all meetings where any of the following subjects were discussed: (i) the valuation of the Company, including budgets, medium term plans, business plans or any other plans concerning future earnings, turnover, profit, cash flow, EBITDA or net debt equity; (ii) the

6

Squeeze Out or the Restructurings; (iii) compensation paid or to be paid to minority shareholders of the Company in connection with the Squeeze Out; or (iv) incentive programs, share participation programs or compensations of any kind to be offered or paid in connection with the Squeeze-Out or the Restructurings.

17.     All minutes of any meetings by Your Board of Directors or officers (or meetings of directors or officers for any of Your Affiliated Entities), for all such meetings where any of the following subjects were discussed: (i) the valuation of the Company, including budgets, medium term plans, business plans or any other plans concerning future earnings, turnover, profit, cash flow, EBITDA or net debt equity; (ii) the Squeeze Out or the Restructurings; (iii) compensation paid or to be paid to minority shareholders of the Company in connection with the Squeeze Out; or (iv) incentive programs, share participation programs or compensations of any kind to be offered or paid in connection with the Squeeze-Out or the Restructurings.

18.     All documents and communications concerning any budgets, medium term plans, business plans or any other plans concerning future earnings, turnover, profit, cash flow, EBITDA, net debt equity and value of the Company, including, for the avoidance of doubt, any subsequent changes thereto, to the extent not covered by any of the other Requests.

19.     Financial statements of Constantia Flexibles Beteiligungs GmbH, Constantia Flexibles GmbH, Constantia Flexibles Group GmbH, Constantia Flexibles Holding GmbH, Constantia Flexibles International GmbH and Constantia Flexibles Sales GmbH to the extent not covered by any of the other Requests.

20.     All share purchase agreements for which the Company was a buyer or Seller, to the extent not covered by any of the other Requests.

## RESPONDENT IS COMMANDED TO APPEAR
## FOR THE TAKING OF A DEPOSITION

Respondent shall appear for the taking of a deposition upon oral examination commencing at the offices of Eaton & Van Winkle LLP, located at 3 Park Avenue, New York, New York 10016, no later than sixty (60) days from the service of the foregoing Order on Respondent, or another agreed date, before an officer authorized by law to administer oaths. The matters on which examination is required are identified below. In accordance with the provisions of Rules 30 and 45 of the Federal Rules of Civil Procedure, the deposition will be recorded by stenographic means and may be videotaped. Because the deponent is not a natural person, Respondent shall designate to testify one or more partners, officers, directors, managing agents, employees or other persons who have consented to testify on its behalf, who shall have knowledge of, and who are competent to testify regarding the categories identified below.

## TOPICS OF DEPOSITION[1]

### TOPIC NO. 1

The value of the Company from January 1, 2009 through the present, including without limitation the value of the Company prior to the Squeeze Out, during the Squeeze Out, and during the Restructurings.

### TOPIC NO. 2

Your (or Your Affiliated Entities) communications with Baestlein or any members of the supervisory board of the Company concerning the valuation of the Company, and any and all agreements between the Company and Baestlein or any members of the supervisory board of the Company or any companies or trusts affiliated with Baestlein or any members of the supervisory

---

[1] The definitions and instructions that apply to Respondent's "Production of Documents", *supra*, apply to the "Topics of Deposition" and are hereby incorporated as though fully stated herein.

board of the Company, pursuant to which Baestlein or any members of the supervisory board of the Company or any companies or trusts affiliated with Baestlein or any members of the supervisory board of the Company received, or have been promised, any compensation, including a direct or indirect participation in the Company.

## TOPIC NO. 3

The retention of E&Y or any other third parties to prepare valuations of the Company and all other work conducted by E&Y in connection with the Company, including the acquisition of stock by You or Your Affiliated Entities in the Company and the Restructurings.

## TOPIC No. 4

Your (or Your Affiliated Entities) sale, or contemplated sale of any subsidiaries of the Company from January 1, 2009 to the present, including the time period before, during and after the Squeeze Out.

## TOPIC NO. 5

Your (or Your Affiliated Entities) communications with the Company (including without limitation its officers, directors, employees and supervisory board members), the Company minority shareholders, or the Majority Shareholder concerning the Squeeze Out, the Restructuring and any compensation paid or to be paid by the Company, or by anyone else, to minority shareholders in connection with the Squeeze Out.

## TOPIC NO. 6

Your (or Your Affiliated Entities) acquisition of stock in the Company.

## TOPIC NO. 7

The Restructurings of the holding entities owning or owned by the Company.

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                     :

IN THE MATTER OF THE APPLICATION   :
OF CUBE INVEST GmbH FOR AN ORDER  :    No. ___ MC _____
TO TAKE DISCOVERY PURSUANT TO 28  :
U.S.C. §1782                               :
                                       :
                                       :
-----------------------------------------------------------------x

## CUBE INVEST GmbH's SECOND APPLICATION FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

1.     Pursuant to 28 U.S.C. § 1782 ("section 1782"), Cube Invest GmbH ("Cube") respectfully submits its Application for an order: (a) authorizing Cube to take documentary and testimonial discovery from OEP Capital Advisors, L.P. ("OEP Capital" or "Respondent"); and (b) ordering OEP Capital to provide such discovery.  All such discovery is for use in court proceedings pending before the Commercial Court of Vienna, Austria under docket number 75 Fr 13190/10h (the "Austrian Review Proceedings").  OEP Capital is not a party to those proceedings, and a proposed form of order is annexed hereto as Exhibit A.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the Application is being made in accordance with 28 U.S.C. § 1782.

3.     Venue in this District is proper pursuant to 28 U.S.C. § 1391.

### THE PARTIES

4.     Applicant Cube is a limited liability company registered in Austria in the Commercial Register of the Commercial Court of Vienna under FN 233810p, operating under Austrian law. On November 22, 2010, Cube initiated legal proceedings (the "Austrian Review

Proceedings") which are currently pending before the Commercial Court of Vienna, Austria, under docket number 75 Fr 13190/10h.

5.      Respondent OEP Capital is a Delaware limited partnership which maintains its principal place of business at 510 Madison Avenue, 19th Floor, New York, New York 10022. (Floyd Decl., Ex. J)  It is also registered with the New York State, Department of State, Division of Corporations to do business in New York.  (Floyd Decl., Ex. A)  OEP Capital is therefore "found" within this District within the meaning of 28 U.S.C. § 1782.

6.      OEP Capital is also part of the private equity group known as One Equity Partners ("One Equity Partners" or the "OEP Group").   Amongst other things, the OEP Group's website identifies that group as maintaining offices in New York and in Frankfurt, Germany.  (Floyd Decl., Ex. B)

   a.   Various filings made with the US SEC reflect OEP Capital's head office as being located in New York City at 510 Madison Avenue (Floyd Decl., Ex. J); and

   b.   The OEP Group's website identifies its Frankfurt office as operating under the name of OEP Europe GmbH ("OEP Europe").  On information and belief, the full, legal name for OEP Europe is "One Equity Partners Europe GmbH" which is a wholly owned subsidiary of OEP Capital.  (Floyd Decl., Ex. C)

7.      Additionally, a non-party to this Application is an Austrian entity called Constantia Flexibles Group GmbH ("CFG").  CFG was formerly known as Constantia Packaging GmbH ("CPG") and, before that, as Sulipo Beteiligungsverwaltungs GmbH ("Sulipo") (collectively with CFG, the "Majority Shareholder").  Though a non-party to this Application, the Majority Shareholder *is the respondent* in the Austrian Review Proceedings.

## PROCEDURAL FACTS PERTAINING TO RELATED CASES

8.      Additional facts concerning the Austrian Review Proceedings and the transactions giving rise to that action, as well as potentially related discovery proceedings which are already pending in this Court, are further described in the sections below.  Pertinent facts are also set forth in the accompanying Declaration of Dr. Alexander Proschofsky (the "Proschofsky Declaration"), the Declaration of Dr. Martin Löffler (the "Löffler Declaration"), and the Declaration of Edward W. Floyd (the "Floyd Declaration").  In the interest of clarity though, paragraphs 9 through 24 below provide an overview of the procedural posture.

9.      In that regard, the Austrian Review Proceedings arise from an August 2010 stock transaction by which the Majority Shareholder of an entity known as Constantia Packaging A.G. (the "Company"), forced minority shareholders to sell their shares by way of a process which is known in Austria as a "Squeeze Out."

10.      Cube was one of the minority shareholders forced to sell shares.  Recognizing that the forced price per share was grossly below the fair market value (indeed, alleged to be *more than 50% below fair market value*), Cube commenced the Austrian Review Proceedings against the Majority Shareholder.  (Proschofsky Decl. ¶ 4)

11.      The Austrian Review Proceedings are thus focused on what the fair valuation of the Company should have been for the Squeeze Out, and the proceedings involve allegations relating to the rights of minority shareholders and breaches of fiduciary duties, amongst other serious matter.  (Proschofsky Decl. ¶ 4)

12.      In connection with events leading up to, and through, the Squeeze Out, the Majority Shareholder acted in conjunction with the OEP Group. (Floyd Decl., Ex. D [October 12, 2009 press release by OEP stating that "Sulipo . . . an acquisition company controlled by One

Equity Partners advised funds, reached an agreement today . . . to acquire a stake of approx. 66 percent in Constantia Packaging AG.  Under the terms of the agreement, OEP will become majority shareholder."]) (Floyd Decl., Ex. E ["OEP is financing the takeover"]).

13.    The OEP Group eventually sold that investment.

14.    However, at all times material to the Squeeze Out, the OEP Group was the Company's ultimate, majority shareholder, and its personnel, subsidiary entities, and funds were directly involved in the processes related to that investment.

15.    Accordingly, the OEP Group, as well as the various entities and funds within that structure (together within individual executives), have possession, custody or control over materials and information which are highly relevant to the Austrian Review Proceedings.

16.    Cube thus made a prior application in this Court to obtain Section 1782 discovery. Those related proceedings, which were commenced under S.D.N.Y. docket number 16-cv-266 (DLC), remain pending (the "First Application").  They have yielded discovery, and a supplemental production was made as recently as December 2016.

17.    Nonetheless, information developed during the First Application demonstrates that the entity which appeared and produced discovery in response thereto was not the entity which would have the largest quantity of information relevant to issues being addressed in the Austrian Review Proceedings.

18.    More specifically, papers from the First Application were served on "One Equity Partners, LLC" at 510 Madison Avenue (i.e., the address of OEP Capital's principal office). (Floyd Decl., Ex. F)

19.    But, the entity which appeared and produced discovery in response to the First Application was Heritage PE (OEP) III, LP ("Heritage") (Floyd Decl., Ex. G).

20.     On information and belief, by the time of its appearance therein, Heritage was no longer part of the OEP Group which currently maintains a head office at 510 Madison Avenue.

21.     Thus, at present, Cube does not know why Heritage – rather than OEP Capital - appeared in response to the First Application.

22.     Furthermore, Heritage's counsel made it clear during a conference held in connection with the First Application, that some other entity(ies) would have a far more extensive amount of responsive information.  In particular, the transcript from that conference indicates Heritage's counsel as having provided that:

    a.  Cube was mistakenly trying to "lump all the OEP entities together" (Floyd Decl., Ex. H at 13: 2-3);

    b.  Heritage did not become involved with the investment in the Company (i.e., Constantia) until the time when the OEP Group was about to divest itself from that investment (Floyd Decl., Ex. H at 16: 2-9);

    c.  "OEP Europe would be the entity . . . that would have the most relevant documents" (Floyd Decl., Ex. H at 12: 9-14); and

    d.  OEP Europe, had been spun-off from Heritage's group and Heritage itself did not "have possession, custody or control of any documents" (Floyd Decl., Ex. H at 12: 15-21).

23.     As set forth above, OEP Europe is a wholly owned subsidiary of OEP Capital. Moreover, individuals who remain affiliated with OEP Capital, and continue to work from its head office in New York, were closely involved with the investment in the Company.  As stated on the OEP Group's website, its New York-based president was "closely involved in all of OEP's prior investments."  (Floyd Decl., Ex. I)

24.      Cube's Second Application therefore seeks discovery from OEP Capital of all information and material in its possession, custody or control that is relevant to the Squeeze Out or to any valuations of the Company, including, but not limited to, those held by its wholly owned subsidiary, OEP Europe and/or available on mutually accessible shared drives or other electronic media.

**THE SQUEEZE OUT and AUSTRIAN REVIEW PROCEEDINGS**

25.      Prior to the Squeeze Out, Cube was a minority shareholder in the Company. (Proschofsky Decl. ¶ 8)

26.      Also prior to the Squeeze Out, in approximately October 2009, the Majority Shareholder agreed to acquire, and in 2010 did acquire, an approximately 75% ownership interest in the Company which was done, on information and belief, with the stated aim of selling the Company's subsidiaries as quickly and profitably as possible.  Moreover, during the time running up to and through the Squeeze Out, the OEP Group was the ultimate corporate parent of the Majority Shareholder. (Proschofsky Decl. ¶ 8)

27.      On August 24, 2010, the Company's shareholders passed a resolution which authorized the Majority Shareholder to acquire the minority shareholders' Company stock by way of the Austrian Squeeze Out procedure, pursuant to which Cube and all other minority shareholders were required to surrender their shares in the Company in return for payment for their shares from the Majority Shareholder. (Proschofsky Decl. ¶ 10)

28.      In the Squeeze Out, Cube and the other minority shareholders received €47 per share for their Company stock from the Majority Shareholder. (Proschofsky Decl. ¶ 11)

29.      On November 22, 2010, Cube initiated the Austrian Review Proceedings against the Majority Shareholder by filing a motion (which constituted a complaint) before the Commercial Court of Vienna, located in Vienna, Austria, in which Cube asserted that the

consideration of €47 per share that the Majority Shareholder paid to Cube, and to the other minority shareholders, was less than the fair market value of the Company. (Proschofsky Decl. ¶ 12)

30.     At the time of the Squeeze Out, the OEP Group indirectly owned 75% of the Company (through its role as corporate parent of the Majority Shareholder). (Proschofsky Decl. ¶ 14)

31.     Evidence developed in the Austrian Review Proceedings (prior to Cube's filing of its First Application for Section 1782 discovery in this Court) revealed the information alleged below in paragraphs 32 through 44 below. (Cube reserves all rights to rely upon information developed in connection with the First Application in the event necessary for purposes of this Application.)

32.     The OEP Group managed the Company and several of the Company's subsidiaries under the direction of Mr. Hanno Baestlein ("Baestlein"), who served as a member of the Board of Directors of the Company.   Upon information and belief, Baestlein was also responsible for managing the Squeeze Out on behalf of the Company, including determining how much compensation Cube and the minority shareholders were to receive for their shares. (Proschofsky Decl. ¶ 14)

33.     In connection with the Squeeze Out and pursuant to Austrian laws relating thereto, the Company hired the accounting firm of Ernst & Young ("E&Y") to provide an expert opinion as to the value of the Company's shares.  Although E&Y valued the Company shares as worth €47 per share, upon information and belief, that valuation was far less than the fair market value of the Company's shares for the reasons alleged below and, as alleged in the Austrian Review Proceedings, not in compliance with Austrian law. (Proschofsky Decl. ¶ 16)

34.     Upon information and belief, there was a budget and medium term plan for the Company which was made in or about November 2009 by the Company which forecast profits in amounts which, when subjected to a standard discounted cash flow method of valuation ("DCF Method"), would have resulted in a value per share in the area of €100.   Thereafter, the November 2009 budget was presented to the supervisory board of the Company, but the board refused to approve this budget.   By that time, the Company was already under the *de facto* control of the OEP Group which had signed (but not yet closed on) its acquisition of the majority stake in the Company and was already planning to squeeze out the minority shareholders. Consequently, a new budget was drafted which forecast much lower profits, which resulted in a valuation using a DCF Method of €47 per share.  (Proschofsky Decl. ¶15)

35.     In its expert opinion, E&Y admitted that it did not evaluate and assess the Company budgets and forecasts, which would have been essential to accurately determine the Company's value. Upon information and belief, either the OEP Group and/or the Majority Shareholder and/or the Company instructed E&Y to value the Company on the basis of the revised budget and forecast which showed a dramatic reduction in profitability.  (Proschofsky Decl. ¶ 17)

36.     Moreover, after the Squeeze Out, the OEP Group, via the Majority Shareholder, sold the shares in all major subsidiaries of the Company for consideration amounting in the aggregate to approximately €100 per share.  (Proschofsky Decl. ¶ 18)

37.     The fact that the valuation used for the Squeeze Out was plainly contradicted by subsequent transactions underscores the seriousness of the issues raised in connection with the Austrian Review Proceedings.   Therein, papers filed raise allegations of criminal conduct and breaches of fiduciary duties in connection with the Squeeze Out.  (Proschofsky Decl. ¶ 19)

38.     In addition, a group of former minority shareholders in the Company, including Cube, have obtained an expert report on the valuation of the Company at the time of the Squeeze Out, which concluded that the Company stock was then worth at least €100 per share.  This evidences that at the time of the Squeeze Out, Cube's shares were worth, if not at least €100 per share, then considerably more than the €47 per share that the Majority Shareholder paid to Cube for Cube's shares.  (Proschofsky Decl. ¶ 20)

39.     In preparation for the Squeeze Out, the OEP Group commenced a major restructuring of the holding entities owning and owned by the Company (the "Restructurings"), which required valuation reports by independent experts analyzing the fair market value of the Company to be prepared.  (Proschofsky Decl. ¶ 21)

40.     An independent expert appointed by the Court in the Austrian Review Proceedings has stated that the Company refused to provide him with certain documents that he requested from the Company, including the valuation reports which were prepared for the Restructurings by independent third parties.  (Proschofsky Decl. ¶ 22)

41.     Cube is unaware whether the Company (as opposed to the Majority Shareholder and/or the OEP Group) even had those valuation reports, but, on information and belief, the OEP Group would have had and retained such reports because they were essential to the Restructurings.  Moreover, also upon information and belief, the Company (if it even had those reports) wanted to withhold them from the court-appointed expert in the Austrian Review Proceedings because the valuation reports reflect that the per share value of Company stock was higher than the €47 that the Majority Shareholder paid to Cube and the other Company minority shareholders in the Squeeze Out.  (Proschofsky Decl. ¶ 23)

42.     Following the Squeeze Out, the OEP Group sold, or listed for sale on the Austrian Stock Exchange, three subsidiaries of the Company for aggregate amounts much greater than the €47 per share that Cube and the other minority shareholders of the Company received in the Squeeze Out. (Proschofsky Decl. ¶ 24)

43.     For example, during the Squeeze Out, upon information and belief, the value of one of the Company's subsidiaries, AMAG, was calculated at €297 million.  However, six months after the Squeeze Out, an initial public offering of AMAG occurred, with a valuation of approximately €739 million.  Therefore, either the value of AMAG increased by 2.5 times in the six months following the Squeeze Out, or, more likely, AMAG was deliberately undervalued in the Squeeze Out to short change Cube and the other Company minority shareholders. (Proschofsky Decl. ¶ 25)

44.     In the Austrian Review Proceedings, Cube is seeking to provide evidence in support of its claim that during the Squeeze Out, the value of the Company's stock was greater than the €47 per share that the Majority Shareholder paid to Cube and the other Company minority shareholders.  (Proschofsky Decl. ¶ 26)

45.     To that end, by and through its Application, Cube seeks documents and information in OEP Capital's possession, custody or control concerning the valuation of the Company as respects the Squeeze Out and the Restructurings.  This information will be used as evidence in the Austrian Review Proceedings to support Cube's claim that the €47 per share paid by the Majority Shareholder to Cube and the other minority shareholders in the Squeeze Out was less than the fair market value of the Company at the time.

46.     A proposed set of document request to be served with a subpoena is attached as Appendix 1 to the proposed order submitted as Exhibit "A" to this Application.     Upon information and belief, Respondent has custody, possession or control of this information.

### 28 U.S.C. § 1782

47.     28 U.S.C. § 1782 provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.  By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or thing produced, in accordance with the Federal Rules of Civil Procedure.

48.     An Order seeking discovery pursuant to 28 U.S.C. § 1782 is warranted if the following elements have been shown: (1) that the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made; (2) that the discovery be for use in a proceeding before a foreign tribunal; and (3) that the application be made by an interested person.

49.     Here, as alleged *supra*, OEP Capital conducts business at its headquarters which are located within the Southern District of New York.  Therefore, OEP Capital is "found" within the Southern District of New York.

50.     The evidence sought by this Application would also be for use in the Austrian Review Proceedings currently pending before the Commercial Court of Vienna, Austria, which is a "foreign tribunal" within the meaning of 28 U.S.C. § 1782.  In particular, that evidence would be used in support of Cube's claims that the consideration paid to Cube and other minority shareholders in the Squeeze Out was far below the fair market value of the Company and thus contrary to Austrian law.

51.     Additionally, Cube, as a litigant in the Austrian Review Proceedings, is an "interested person" within the meaning of 28 U.S.C. § 1782.

52.     Furthermore, as is set forth more fully in the accompanying Memorandum of Law, the four discretionary factors that this Court should consider in determining whether to grant the requested relief, pursuant to the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 124 S. Ct. 2466 (2004), all favor Cube.

53.     Consequently, all the elements for an order seeking discovery pursuant to 28 U.S.C. § 1782 are satisfied, and it would be a proper exercise of discretion for this Court to permit the discovery requested.

54.     Other than the discovery sought in connection with the aforementioned First Application, Cube has not sought similar relief pursuant to 28 U.S.C. § 1782.

**WHEREFORE**, Applicant Cube Invest GmbH prays for the Court to issue an order:

(A)     Granting Cube's Second Application;

(B)     Ordering that OEP Capital Partners, L.P. shall make available to Cube all documents responsive to the categories of documents, described in Appendix "1" to the proposed form of order annexed to Cube's Application, within twenty (20) days of service of such order on Respondent or at such other time as may be agreed;

(C)   Ordering that OEP Capital Partners, L.P. shall appear at a deposition and give testimony, in accordance with Appendix "1" to the proposed form of order annexed to Cube's Application, within sixty (60) days of service of such order on Respondent or at such other time as may be agreed;

(D)   Appointing Edward W. Floyd, and any other attorneys affiliated with the law firm of Eaton & Van Winkle LLP and admitted to practice before the United States District Court for the Southern District of New York, as examiners to: (i) take depositions; (ii) obtain the requested documents and information pursuant to Appendix "1" to the proposed form of order annexed to Cube's Application; and (iii) issue subpoenas to Respondent to obtain documents and testimony (in addition to the documents and testimony described by Appendix "1" to proposed order) pursuant to the Federal Rules of Civil Procedure; AND

(E)   Ordering that Cube shall serve a copy of such order on Respondent within five (5) days of entry of the order and, upon such service, to file an Affidavit of Service with the Court attesting that this has been done.

Dated: New York, New York
       February 1, 2017

EATON & VAN WINKLE LLP

By:  _____
     Edward W. Floyd

3 Park Avenue, 16th Floor
New York, New York 10016
Tel:  (212) 779-9910
efloyd@evw.com

*Attorneys for Applicant Cube Invest GmbH*