UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- x

IN THE MATTER OF THE APPLICATION
OF CUBE INVEST GmbH FOR AN ORDER
TO TAKE DISCOVERY PURSUANT TO 28　　　:　　No. ____ MC ____
U.S.C. § 1782

------------------------------- x

17MISC 36

RECEIVED
FEB 1 − 2017
U.S.D.C. S.D. N.Y.
CASHIERS

**MEMORANDUM OF LAW IN SUPPORT
OF CUBE INVEST GmbH's SECOND APPLICATION FOR AN ORDER
TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

EATON & VAN WINKLE LLP
Edward W. Floyd
3 Park Avenue
New York, New York 10016

212.779.9910

efloyd@evw.com

*Attorneys for the Applicant Cube Invest GmbH*

1

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES..................................................................................3

I. PRELIMINARY STATEMENT..................................................................4

II. STATEMENT OF FACTS............................................................................4

    The Parties.......................................................................................................4

    Background Facts Pertaining to the Austrian Review Proceedings..................5

    Background Pertaining to Cube's Prior Application Pursuant to Section 1782.............9

III. ARGUMENT................................................................................................10

    I. THE COURT SHOULD GRANT CUBE'S APPLICATION FOR AN ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782............................................................................10

        A. Cube's Application Satisfies the Requirements of 28 U.S.C. § 1782.........10

        B. The Court Should Exercise its Discretion in Favor of Granting Cube's Application for Discovery......................................................12

IV. CONCLUSION..............................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Application of Bloomfield Investment Resources Corp.*,
    315 F.R.D. 165 (S.D.N.Y. 2016) ..................................................................................... 16

*In re Application of Chevron Corporation*,
    709 F.Supp.2d 283 (S.D.N.Y. 2010) ................................................................................ 13

*In re Application of Esses*,
    101 F.3d 873 (2d Cir. 1996) ............................................................................................. 12

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
    19-MC-88, 2006 WL 3844464 (Dec. 29, 2006) .............................................................. 16

*In re Application of Imanagement Services, Ltd.*,
    No. Civ A 05-2311(JAG), 2006 WL 547949 (D.N.J. March 3, 2006) ............................ 14

*In re Ex Parte Application of Kleimar N.V.*,
    16–mc–355, 2016 WL 6906712 (S.D.N.Y. Nov. 16, 2016) ............................................ 15

*In re Application of Malev Hungarian Airlines*,
    964 F.2d 97, 100 (2d Cir. 1992) ....................................................................................... 12

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir.1995) .............................................................................................. 14

*Intel Corp. v. Advanced Micro Systems, Inc.*,
    124 S. Ct. 2466, 542 U.S. 241 – 246 (2004) .............................................................. 11, 13

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) ............................................................................................... 12

*Sergeeva v. Tripleton International Limited*,
    15-13008, 2016 WL 4435616 (11th Cir. 2011) ............................................................... 16

*In re Winning (HK) Shipping Co.*,
    No. 09–22659–MC, 2010 WL 1796579 ........................................................................... 14

**Statutes**

28 U.S.C. 1782 .......................................................................................................................... 10

## PRELIMINARY STATEMENT

Cube Invest GmbH ("Cube") respectfully submits this memorandum of law in support of its Second Application ("Application") for an order: (a) authorizing Cube to take documentary and testimonial discovery from OEP Capital Advisors, L.P. ("OEP Capital" or "Respondent"); and (b) ordering OEP Capital to provide such discovery. All such discovery is for use in court proceedings pending before the Commercial Court of Vienna, Austria under docket number 75 Fr 13190/10h (the "Austrian Review Proceedings").

## STATEMENT OF FACTS

The statements set forth in the accompanying Declaration of Dr. Alexander Proschofsky (the "Proschofsky Declaration"), the Declaration of Dr. Martin Löffler (the "Löffler Declaration"), and the Declaration of Edward W. Floyd (the "Floyd Declaration"), together with all exhibits thereto and the Application, are fully incorporated herein.

### The Parties

Applicant Cube is a limited liability company registered in Austria in the Commercial Register of the Commercial Court of Vienna under FN 233810p, operating under Austrian law. On November 22, 2010, Cube initiated legal proceedings (the "Austrian Review Proceedings") which are currently pending before the Commercial Court of Vienna, Austria, under docket number 75 Fr 13190/10h. (Proshchofsky Decl. ¶ 1, 12 and Ex. A).

Respondent OEP Capital is a Delaware limited partnership which maintains its principal place of business at 510 Madison Avenue, 19th Floor, New York, New York 10022. (Floyd Decl. ¶ 6[a]) It is also registered with the New York State, Department of State, Division of Corporations to do business in New York. (Floyd Decl., Ex. A) OEP Capital is therefore "found" within this District within the meaning of 28 U.S.C. § 1782.

OEP Capital is also part of the private equity group known as One Equity Partners ("One Equity Partners" or the "OEP Group"). Amongst other things, the OEP Group's website identifies that group as maintaining offices in New York and in Frankfurt, Germany. (Floyd Decl., Ex. B) The OEP Group's website identifies its Frankfurt office as operating under the name of OEP Europe GmbH ("OEP Europe"). On information and belief, the full, legal name for OEP Europe is "One Equity Partners Europe GmbH" which is a wholly owned subsidiary of OEP Capital. (Floyd Decl., Ex. C) It should also be noted that OEP Capital is a non-party to the Austrian Review Proceedings. (Löffler Decl. ¶ 6)

Additionally, a non-party to this Application is an Austrian entity called Constantia Flexibles Group GmbH ("CFG"). CFG was formerly known as Constantia Packaging GmbH ("CPG") and, before that, as Sulipo Beteiligungsverwaltungs GmbH ("Sulipo") (collectively with CFG, the "Majority Shareholder"). Though a non-party to this Application, the Majority Shareholder *is the respondent* in the Austrian Review Proceedings. (Proschofsky Decl. ¶¶ 8, 12)

### Background Facts Pertaining to the Austrian Review Proceedings

The Austrian Review Proceedings arise from an August 2010 stock transaction by which the Majority Shareholder of an Austrian entity known as *Constantia Packaging A.G.* (the "Company") (emphasis added to note distinction from Constantia Packaging GmbH), forced the minority shareholders to sell their shares by way of a process which is known in Austria as a "Squeeze Out." Cube was one such minority shareholder which was forced to sell shares. Recognizing that the forced price per share was grossly below the fair market value (indeed, *alleged to be more than 50% below fair market value*), Cube commenced the Austrian Review Proceedings. Those proceedings are thus focused on what the fair market valuation of the Company should have been for the Squeeze Out, and the proceedings involve allegations relating

to the rights of minority shareholders and breaches of fiduciary duties, amongst other serious matters. (Proschofsky Decl. ¶¶ 3-4)

Prior to the Squeeze Out, in approximately October 2009, the Majority Shareholder (then known Sulipo) agreed to acquire, and in 2010 did acquire, an approximately 75% ownership interest in the Company. As alleged, this was done with the stated aim of selling the Company's subsidiaries as quickly and profitably as possible. At that time, and throughout the Squeeze Out, the OEP Group was the ultimate, corporate parent of the Majority Shareholder. (Proschofsky Decl. ¶ 8)

On or about August 24, 2010, the Company's shareholders passed a resolution which authorized the Majority Shareholder to acquire the minority shareholders' stock in the Company through a Squeeze Out. Pursuant to that Squeeze Out, Cube and all other minority shareholders were required to surrender their shares in the Company in return for payment for their shares from the Majority Shareholder. Cube and the other minority shareholders received €47 per share from the Majority Shareholder in return for their Company stock. Cube thereafter initiated the Austrian Review Proceedings against the Majority Shareholder and asserted that the consideration of €47 per share paid pursuant to the Squeeze Out was less than the fair market value of the Company's stock, and therefore not fair and reasonable as required under Austrian law. (Proschofsky Decl. ¶¶ 10-12)

At the time of the Squeeze Out, the OEP Group not only held an indirect stake of 75% in the Company (through its role as corporate parent of the Majority Shareholder), but also managed the Company, and several subsidiaries, under the direction of Mr. Hanno Baestlein ("Baestlein"), who served as a member of the Board of Directors of the Company. Upon information and belief, Baestlein was also responsible for managing the Squeeze Out on behalf

of the Company, including determining how much compensation would be paid. (Proschofsky Decl. ¶ 14)

Moreover Cube's allegations in the Austrian Review Proceedings pertaining to the inadequacy of that compensation are informed and supported by multiple considerations which are more fully described in the accompanying Proschofsky Declaration but which can be summarized as follows:

    a. Upon information and belief, there was a budget and medium term plan made originally in about November 2009 by the Company which had forecast profits . . . which, when subjected to a standard discounted cash flow method of valuation ("DCF Method"), would have resulted in a value per share in the area of €100. Thereafter, the November 2009 budget was presented to the supervisory board of the Company, but the board refused to approve this budget. By that time, the Company was already under the *de facto* control of the OEP Group which had signed (but not yet closed on) its acquisition of the majority stake in the Company and was already planning to squeeze out the minority shareholders. Consequently, a new budget was drafted which forecast much lower profits, which resulted in a valuation using a DCF Method of €47 per share. (Proschofsky Decl. ¶ 15);

    b. In connection with the Squeeze Out, the Company hired the accounting firm, Ernst & Young ("E&Y"), to provide an expert opinion as to the value of the Company's shares . . . [However,] E&Y subsequently admitted that it did not review the Company budgets and forecasts, which would have been essential to accurately determine the Company's value. (Proschofsky Decl. ¶¶ 16-17);

    c. [Furthermore,] all major subsidiaries of the Company [were subsequently sold by the OEP Group (via the Majority Shareholder)] for consideration amounting, in the aggregate, to approximately €100 per share . . . [Some such sales occurred in a very short period of time after the Squeeze Out (as little as six months) but yielded remarkable returns when compared against the particular subsidiary's valuation which had been used in connection with the Squeeze Out . . . For example, during the Squeeze Out, upon information and belief, the value of one of the Company's subsidiaries, AMAG, was calculated at €297 million. However, six months after the Squeeze Out, an initial public offering of AMAG occurred, with a valuation of approximately €739 million. Therefore, either the value of AMAG increased by 2.5 times in the six months following the Squeeze Out, or, more likely, AMAG was deliberately undervalued in the Squeeze Out to short change Cube and the other Company minority shareholders. (Proschofsky Decl. ¶¶ 18, 25); AND

d. In addition, a group of former minority shareholders in the Company, including Cube, have obtained an expert report on the valuation of the Company at the time of the Squeeze Out, which concluded that the Company stock was then worth at least €100 per share. This evidences that, at the time of the Squeeze Out, Cube's shares were worth, if not at least €100 per share, then considerably more than the €47 per share that the Majority Shareholder paid to Cube for Cube's shares. (Proschofsky Decl. ¶ 20)

Notably, in preparation for the Squeeze Out and the OEP Group's subsequent sale (via the Majority Shareholder) of its shares in certain of the Company's subsidiaries, the OEP Group and/or the Majority Shareholder commenced a major restructuring of the holding entities owning and owned by the Company (the "Restructurings"), which required valuation reports by independent experts analyzing the fair market value of the Company to be prepared. (Proschofsky Decl. ¶ 21) On information and belief, the OEP Group would have had and retained such reports because they were essential to the Restructurings. Also, on information and belief, those valuation reports would reflect that the per share value of Company stock was higher than the €47 which the Majority Shareholder paid to Cube and the other Company minority shareholders in the Squeeze Out. (Proschofsky Decl. ¶ 23)

To that end, by and through its Application, Cube seeks documents and information, in OEP Capital's possession, custody or control, concerning the valuation of the Company including all subsidiaries or divisions thereof, as respects the Squeeze Out and the Restructurings. This information will be used as evidence in the Austrian Review Proceedings to support Cube's claim that the €47 per share paid by the Majority Shareholder to Cube and the other minority shareholders in the Squeeze Out was less than the fair market value of the Company at the time.

### Background Pertaining to Cube's Prior Application Pursuant to Section 1782

Cube made a prior application in this Court to obtain Section 1782 discovery. Those related proceedings, which were commenced under S.D.N.Y. docket number 16-cv-266 (DLC), remain pending (the "First Application"). (Floyd Decl. ¶ 11) The entity which was named as the respondent in connection with the First Application was called "One Equity Partners, LLC." However, a different entity, Heritage PE (OEP) III, L.P. ("Heritage"), ultimately appeared as the respondent and produced some documentary discovery. (Proschofsky Decl. ¶ 6; Floyd Decl., Ex. G)

The proceedings with respect to the First Application have yielded discovery, and a supplemental production was made as recently as December 2016. However, information developed during the First Application demonstrates that the entity which appeared and produced discovery in response thereto was not the entity which would have the largest quantity of information relevant to issues being addressed in the Austrian Review Proceedings. (Proschofsky Decl. ¶ 6)

While Heritage's name includes a reference to OEP, and Heritage did produce documents in connection with the First Application, it appears that Heritage itself is no longer part of the private equity group known as One Equity Partners and that entities which are presently within that group (such as OEP Capital) would be the persons having possession, custody and/or control over the most documents relevant to the subject matter of the Austrian Review Proceedings.

Indeed, the transcript from a conference held in connection with the First Application reflects Heritage's counsel as providing that some other entity(ies) would have a far more extensive amount of responsive information. In particular, that transcript reflects Heritage's counsel as indicating that:

      a.    Cube was mistakenly trying to "lump all the OEP entities together" (Floyd Decl., Ex. H at 13: 2-3);

9

b.  Heritage did not become involved with the investment in the Company (i.e., Constantia) until the time when the OEP Group was about to divest itself from that investment (Floyd Decl., Ex. H at 16: 2-9);

c.  "OEP Europe would be the entity . . . that would have the most relevant documents" (Floyd Decl., Ex. H at 12: 9-14); AND

d.  OEP Europe, had been spun-off from Heritage's group and Heritage itself did not "have possession, custody or control of any documents" (Floyd Decl., Ex. H at 12: 15-21).

(Floyd Decl., Ex. H)

OEP Europe is, on information and belief, a wholly owned subsidiary of OEP Capital. (Floyd Decl., Ex. C) Moreover, individuals who remain affiliated with OEP Capital, and continue to work from its head office in New York, were closely involved with the investment in the Company. As stated on the OEP Group's website, its New York-based president was "closely involved in all of OEP's prior investments." (Floyd Decl., Ex. I)

Cube's Second Application therefore seeks discovery from OEP Capital of all information and material in its possession, custody or control that is relevant to the Squeeze Out or to any valuations of the Company, including, but not limited to, those held by its wholly owned subsidiary, OEP Europe and/or available on mutually accessible shared drives or other electronic media.

## ARGUMENT

### I. THE COURT SHOULD GRANT CUBE'S APPLICATION FOR AN ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782.

#### A. Cube's Application Satisfies the Requirements of 28 U.S.C. 1782.

28 U.S.C. § 1782 authorizes discovery to litigants or other "interested persons" in

proceedings before foreign and international tribunals. The Supreme Court held in *Intel Corp. v. Advanced Micro Systems, Inc.*, that district courts have authority to order discovery pursuant to Section 1782 provided that: (i) the discovery sought is for use in a foreign tribunal; (ii) the person from whom discovery is sought is found, or resides within the district where the application is made; and (iii) the party seeking the discovery is a foreign tribunal or interested person in the foreign proceeding. *Intel Corp. v. Advanced Micro Systems, Inc.*, 124 S. Ct. 2466, 2471-2472, 542 U.S. 241, 244 – 246 (2004). Here, all such requirements are readily satisfied.

1. *Discovery Sought is For Use in a Foreign Tribunal*

The discovery sought is for use in a foreign tribunal. That is undoubtedly so because the Commercial Court of Vienna, wherein the Austrian Review Proceedings are pending, exercises adjudicatory functions and clearly qualifies as a foreign tribunal. More specifically, it is a trial-level court which is part of the judiciary of the Republic of Austria, and is capable of rendering a decision on the merits leading to a final resolution of the Austrian Review Proceedings. (Löffler Decl. ¶¶ 2, 9).

2. *Respondent is "Found" or Located in The Southern District of New York*

The Respondent, OEP Capital, is registered to do business in New York State and maintains its principal place of business within the geographical confines of this district. (Floyd Decl., Exs. A, B, J) Therefore, OEP Capital is undoubtedly "found" within the Southern District of New York.

3. *Cube Is An "Interested Person" In The Foreign Proceeding Within The Meaning of Section 1782*

A party to a foreign litigation constitutes an "interested person" within the meaning of Section 1782. *See, e.g.*, Intel, 542 U.S. at 256 (". . . . litigants are included among, and may be the most common of, the 'interested person[s] who may invoke § 1782 . . . ."); *accord In re*

11

*Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (Noting that the legislative history of Section 1782 at S. Rep. No. 1580, 88th Cong., 2d Sess., at 8 (1964) provides that an "interested person" under Section 1782 includes one who is "a party to . . . foreign or international litigation.").

Cube, as the claimant in the Austrian Review Proceedings (Proschofsky Decl. ¶ 1), is thus an "interested person" under Section 1782.

### B. The Court Should Exercise its Discretion in Favor of Granting Cube's Application for Discovery

Each threshold requirement is satisfied, as discussed above, and, moreover, the Court should exercise its discretion to allow discovery pursuant to Section 1782(a) in the manner, and to the extent, requested by Cube. All pertinent discretionary factors weigh in favor of the discovery being requested.

That discretion is exercised in light of the "twin aims" of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (same).

In *Intel*, the Supreme Court held that there are four factors relevant to this inquiry: (1) "whether the person from whom discovery is sought is a participant" in the foreign proceeding; (2) the nature and character of the foreign proceeding, and whether the foreign court is receptive to judicial assistance from the United States; (3) whether the Section 1782 discovery request conceals an attempt to avoid foreign evidence-gathering restrictions of a foreign country or the United States; and (4) whether the discovery requests are "unduly intrusive or burdensome."

*Intel Corp.*, 124 S. Ct. at 2483-2484, 542 U.S. at 263-266. Each factor weighs in favor of Cube's Application.

1. *Respondent Is Not A Participant In The Austrian Review Proceedings*

When the person from whom discovery is sought is a party to the foreign proceedings, "the need for § 1782(a) aid is generally not as apparent as it ordinarily is when evidence is sought from a non-participant in the matter arising abroad" because the foreign tribunal would, presumably, have the power to command the production of evidence from parties appearing before it. *Intel*, 124 S.Ct. 2471, 542 U.S. at 244. Here, OEP Capital is not a party to the Austrian Review Proceedings. (Proschofsky Decl., Ex. A) Therefore, the Austrian courts presumably do not have power over OEP Capital, including no power to compel OEP Capital to produce information to Cube relevant to the Austrian Review Proceedings. (Löffler Decl. ¶ 6) This *Intel* factor therefore weighs in favor of granting Cube's Application.

2. *The Austrian Courts, Laws and Rules Are Not Hostile To The Relief That Cube Seeks*

*Intel* provides that "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264 (citing 1964 S. Rep. No. 1580, at 7); *see also In re Application of Chevron Corporation*, 709 F.Supp.2d 283, 292, n.51 (S.D.N.Y. 2010) (citing *Intel* for the proposition that a "§ 1782 application could be granted though the 'European Commission' stated to the District Court that it 'does not need or want the District Court's assistance.'").

Here, the Commercial Court of Vienna is the first-instance decision maker for the Austrian Review Proceedings, and there is no evidence that Austria, including its courts, laws and rules, would be unreceptive to this Court's judicial assistance. (Löffler Decl. ¶ 8). Thus

13

the second *Intel* factor also weighs in Cube's favor. *See, e.g., In re Winning (HK) Shipping Co.*, No. 09-22659-MC, 2010 WL 1796579, \*10 (finding that the second *Intel* factor weighed in favor of granting Section 1782 application where the tribunal was a "first-instance decision maker that renders decisions which are reviewable by" an appellate court, and where there was "no evidence or case law" that the foreign government would be unreceptive to the court's judicial assistance.).

Moreover, a lack of receptivity on the part of the foreign government or tribunal may be shown only "by affirmative evidence, such as evidence showing that the foreign jurisdiction rejected outright federal judicial assistance from the United States." *In re Application of Imanagement Services, Ltd.*, No. Civ A 05-2311(JAG), 2006 WL 547949, \*4 (D.N.J. March 3, 2006) (citations omitted); *accord Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir.1995) ("[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."). Cube is not aware of any such "affirmative evidence" that could apply here, and therefore Austria's receptivity to this Court's judicial assistance should be presumed.

Thus, this *Intel* factor also weighs in favor of granting Cube's Application.

3. *Cube's Application Is Not Filed to Circumvent any Austrian Law, Rule or Ruling*

Under Austrian procedure, there is no mechanism to effectively compel OEP Capital to produce the information to Cube that Cube seeks by this Application because OEP Capital is not a party to the Austrian Review Proceedings. (Löffler Decl. ¶ 6) Therefore, Cube has not filed its Application for any improper purpose or to circumvent any law, rule or ruling by an Austrian court pertaining to the Austrian Review Proceedings, or otherwise. (Löffler Decl. ¶ 7). Rather, Cube seeks documents and information in OEP Capital's possession, custody or control

concerning the valuation of the Company, including all subsidiaries thereof, as respects the Squeeze Out and the Restructuring so that such material and information can be used as evidence in the Austrian Review Proceedings to support Cube's claim that the €47 per share paid was less than the fair market value of the Company at the time. (Proschofsky Decl. ¶ 27) Without Section 1782 relief, Cube will have no way to obtain all such pertinent information which it believes is in OEP Capital's possession, custody or control. Moreover, there is no legal impediment in Austria that restricts or otherwise obstructs Cube's ability to maintain the instant Application, and no Austrian rule or statute exists that denies Cube access to the information that it seeks and the ability to use it as evidence in the Austrian Review Proceedings. (Löffler Decl. ¶ 8) Thus, this factor also weighs in favor of granting Cube's Application.

4. *The Application and Discovery Requests Are Narrowly Tailored and Are Subject to the Court's Review.*

The discovery requests that Cube seeks pursuant to its Section 1782 Application are not unduly intrusive or burdensome. *See In re Ex Parte Application of Kleimar N.V.*, 16–mc–355, 2016 WL 6906712, *3 (S.D.N.Y. Nov. 16, 2016) ("inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." [quoting *Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226 (S.D.N.Y. 2013)]) (also demonstrating that it is the respondent moving to quash a section 1782 subpoena which has the burden to demonstrate that compliance would be unduly burdensome).

Here, Cube merely seeks documents and information believed to be within OEP Capital's possession, custody or control, including responsive materials held by OEP Capital's subsidiaries, such as OEP Europe. As the Eleventh Circuit held in *Sergeeva v. Tripleton International Limited*, with respect to the scope of discoverability under section 1782:

15

discovery pursuant to the Federal Rules of Civil Procedure is broad and covers materials located outside of the United States . . . Thus, the District Court could require that [the respondent] produce responsive documents and information located outside the United States—so long as [the respondent] had possession, custody, or control of such responsive material . . . At bottom, we agree with the District Court that the location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—does not establish a *per se* bar to discovery under § 1782.

*Sergeeva v. Tripleton International Limited*, 15-13008, 2016 WL 4435616, *4 (11th Cir. 2011); *see also In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 19-MC-88, 2006 WL 3844464, *5 (Dec. 29, 2006) ("absent any express statutory language, the location of the documents at issue should at most be a discretionary consideration") (also stating, *id.* at *8, that "[t]he fact that the documents are located abroad, itself, is of little concern. They can easily be shipped to [respondent's] headquarters in New York (or perhaps accessed electronically")) (also observing, *id.* at *5, n.13, that the Second Circuit has not decided this issue and that district courts have reached varying outcomes); *In re Application of Bloomfield Investment Resources Corp.*, 315 F.R.D. 165 at 168 (S.D.N.Y. 2016) (although "[r]espondents have not offered evidence showing that the . . . documents . . . are actually located [abroad] . . . the Court notes that the location of documents abroad is not necessarily a bar to discovery.").

Here, there is no reason to doubt that OEP Capital will have readily available access to its documents concerning the prior deal which is at issue in the Austrian Review Proceedings. Likewise, there is no reason to doubt that a sophisticated entity, such as OEP Capital, would not have efficient access to, or control over, the materials which its subsidiary, OEP Europe has, regarding that deal. Accordingly, the proposed discovery would only entail the production of documents that should be easily available to OEP Capital and within its possession, custody or control, together with a presumably non-complicated deposition.

Therefore, the fourth *Intel* factor also weights in favor of granting Cube's application.

## CONCLUSION

For all the foregoing reasons, Cube Invest GmbH respectfully submits that the Court should issue an order:

- (A) Granting Cube's Second Application;

- (B) Ordering that OEP Capital Partners, L.P. shall make available to Cube all documents responsive to the categories of documents, described in Appendix "1" to the proposed form of order annexed to Cube's Application, within twenty (20) days of service of such order on Respondent or at such other time as may be agreed;

- (C) Ordering that OEP Capital Partners, L.P. shall appear at a deposition and give testimony, in accordance with Appendix "1" to the proposed form of order annexed to Cube's Application, within sixty (60) days of service of such order on Respondent or at such other time as may be agreed;

- (D) Appointing Edward W. Floyd, and any other attorneys affiliated with the law firm of Eaton & Van Winkle LLP and admitted to practice before the United States District Court for the Southern District of New York, as examiners to: (i) take depositions; (ii) obtain the requested documents and information pursuant to Appendix "1" to the proposed form of order annexed to Cube's Application; and (iii) issue subpoenas to Respondent to obtain documents and testimony (in addition to the documents and testimony described by Appendix "1" to proposed order) pursuant to the Federal Rules of Civil Procedure; AND

(E) Ordering that Cube shall serve a copy of such order on Respondent within five (5) days of entry of the order and, upon such service, to file an Affidavit of Service with the Court attesting that this has been done.

Dated: New York, New York
      February 1, 2017

EATON & VAN WINKLE LLP

By: *[signature]*
Edward W. Floyd

3 Park Avenue, 16th Floor
New York, New York 10016
Tel: (212) 779-9910
efloyd@evw.com

*Attorneys for Applicant Cube Invest GmbH*