UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
             :
             :     No. 17 MC 36 (DLC)
IN RE: SECOND APPLICATION OF CUBE  :
INVEST GmbH FOR AN ORDER TO TAKE  :
DISCOVERY PURSUANT TO 28 U.S.C. §  :     **ORAL ARGUMENT REQUESTED**
1782               :
             :
             :
             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

## MEMORANDUM OF LAW IN OPPOSITION TO CUBE INVEST GmbH'S SECOND APPLICATION FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

---

**REED SMITH LLP**
599 Lexington Ave.
New York, New York 10022
(212) 521-5400
(212) 521-5450
*Attorneys for Respondent*
*OEP Capital Advisors, L.P.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ........................................................................................................... 2

  I.  THE AUSTRIAN PROCEEDING ..................................................................... 2

  II.  CUBE'S § 1782 APPLICATION ..................................................................... 3

  III.  OEP CAPITAL AND OEP EUROPE ............................................................. 4

ARGUMENT ................................................................................................................ 5

  I.  THIS COURT MAY NOT ORDER OEP EUROPE TO PRODUCE DOCUMENTS
     UNDER § 1782 BECAUSE OEP EUROPE NEITHER RESIDES NOR IS FOUND IN
     THIS DISTRICT ............................................................................................. 5

  II.  THIS COURT MAY NOT ORDER OEP CAPITAL TO PRODUCE OEP EUROPE'S
     DOCUMENTS UNDER § 1782 ...................................................................... 6

    A.  An Applicant Cannot Circumvent The Statutory "Resides Or Is Found" Requirement
      By Naming The Parent Of The Foreign Entity That Possesses The Requested
      Documents As The Respondent .................................................................... 6

    B.  Section 1782 Does Not Authorize The District Court To Compel Disclosure Of
      Documents Located Outside Of The United States or Otherwise Regulate
      Extraterritorial Conduct ............................................................................. 8

      1.  Congress Did Not Affirmatively And Unmistakably Provide That § 1782 Has
        Extraterritorial Effect, And Therefore It Has None ..................................... 9

      2.  Cube's Request That OEP Capital Obtain Documents From OEP
        Europe Under § 1782 Would Constitute A Prohibited Extraterritorial
        Application Of The Statute ......................................................................... 11

  III.  ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS DISCRETION TO
     DENY CUBE'S § 1782 APPLICATION AS TO OEP EUROPE'S DOCUMENTS ....... 14

    A.  Cube Seeks Discovery Of Information That Is Within the Reach Of The Austrian
      Court ......................................................................................................... 15

    B.  Cube's Application Is An Attempt To Circumvent German Proof-Gathering
      Restrictions ............................................................................................... 17

      1.  Cube's Application Circumvents Germany's Legal Prohibition Against Pre-Trial
        Discovery Among European Union Member States ...................................... 17

      2.  Cube's Application Circumvents the German Data Protection Laws ............ 18

    C.  The Application Is Unduly Intrusive and Burdensome ................................... 21

  IV.  THE COURT SHOULD EXERCISE ITS DISCRETION AND LIMIT THE
     REQUESTED DISCOVERY AS TO OEP CAPITAL ....................................... 24

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Federal Cases**

*Andover Healthcare, Inc. v. 3M Company*,
817 F.3d 621 (8th Cir. 2016) .................................................................................. 21

*Chase Manhattan Corp. v. Sarrio S.A. (In re Sarrio, S.A.)*,
119 F.3d 143 (2d Cir. 1997)................................................................. 8, 9, 10, 11

*In re Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165 (S.D.N.Y. 2016) .............................................. 7

*In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv.
Group. LLC*, No. 14 Civ. 1801 (NRB), 2014 WL 3404955 (S.D.N.Y. July 9, 2014) ............... 7

*In re Elvis Presley Enters. LLC*, 15-mc-386 (DLC),
2016 U.S. Dist. LEXIS 25136 (S.D.N.Y. Mar. 1, 2016) ........................................... 15, 16, 22

*In re Esses*,
101 F.3d 873 (2d Cir. 1996)........................................................................................ 24

*In re Fuhr*,
No. 13 Civ. 6753, 2014 WL 11460502 (S.D.N.Y. Aug. 6, 2014) ....................................... 6, 8

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf*,
No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)................................... 7

*In re Godfrey*,
526 F. Supp. 2d 417 (S.D.N.Y. 2007)..................................................... 5, 6, 8, 11, 14

*In re Gorsoan Ltd. & Gazprombank OJSC*,
No. 13 Misc. 397 (PGG), 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014)................................ 8

*In re Kreke Immobilien KG*,
No. 13 Misc. 110 (NRB), 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ........... 8, 15, 17, 21, 22

*In re Metallgesellschaft AG*,
121 F.3d 77 (2d Cir. 1997).......................................................................................... 15

*In re Microsoft Corp.*,
428 F. Supp. 2d 188 (S.D.N.Y. 2006)................................................................ 8, 16

*In re MT "Baltic Soul" Produktentankschiff-Ahrtsgesellschaft mbH & Co. KG*,
No. 15 Misc. 319 (LTS), 2015 U.S. Dist. LEXIS 136080 (S.D.N.Y. Oct. 6, 2015) .............. 22

*In re Okean B.V.*,
60 F.Supp. 3d 419 (S.D.N.Y. 2014)................................................................................ 21

*In re OOO Promnefstroy*,
No. M 19-99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ....................... 15, 17, 21, 22

*In re Sarrio, S.A.*,
No. 9-372, 1995 WL 598988 (Oct. 11, 1995)..................................................... 8, 11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)................................................................................ 15, 17, 22

*Kestrel Coal Pty. Ltd. v. Joy Global Inc.*,
　　362 F.3d 401 (7th Cir. 2004) ............................................................ 6, 7

*Microsoft Corp. v. United States*,
　　829 F.3d 197, 208 (2d Cir. 2016)............................... 10, 11, 12, 13, 14

*Morrison v. National Australia Bank Ltd*., 561 U.S. 247, 266-67 (2010). .............................. 8, 11

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*,
　　384 F.Supp. 2d 45 (D.D.C. 2005) ........................................................ 7

*RJR Nabisco, Inc. v. European Community*,
　　136 S. Ct. 2090 (2016)............................................................. 8, 9, 10

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
　　376 F.3d 79 (2d Cir. 2004)............................................................. 5, 16

*Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194 (11th Cir. 2016)............................................. 7, 10

*Societe Nationale Industrielle Aerospatiale, et al. v. U.S. Dist. Ct. for the S.D. Iowa*,
　　482 U.S. 522 (1987)............................................................................ 20

**Federal Statutes**

28 U.S.C. § 1782(a). ................................................................... 5, 9, 11

**Federal Rules**

FED. R. CIV. P. 45 .................................................................................... 9

**Other Authorities**

*American Assistance to Litigation in Foreign and International Tribunals:  Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 11 (1998) .................................. 10

S. Rep. No. 88-1580 (1964) ............................................................... 10

*The Next Generation Communications Privacy Act*, 162 U. Pa. L. Rev. 373 (2014)................... 12

Respondent OEP Capital Advisors, L.P. ("OEP Capital") respectfully submits this memorandum of law, together with the Declarations of Dr. Thomas Fischl, Sharri A. Wilner, and Dunja Mauser, in opposition to Cube Invest GmbH's ("Cube") Second Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 (the "Application").

## PRELIMINARY STATEMENT

Cube, an Austrian entity, has explicitly stated that the primary purpose of this § 1782 Application is to obtain the documents of Respondent OEP Capital's German subsidiary, One Equity Partners Europe GmbH ("OEP Europe"), for use in proceedings in Austria. The Application should be denied as to the OEP Europe documents because it fails to meet the mandatory requirements of the statute, and because the factors relevant to the Court's exercise of discretion under § 1782 weigh heavily against this Application.

*First*, Cube's Application does not meet the § 1782 statutory requirement that the "person" from whom discovery is sought be "found" in this district. OEP Europe is not headquartered or incorporated in New York, and does not do business in New York. For this reason alone, the Court should deny Cube's Application to obtain documents from OEP Europe.

*Second*, this Court should not compel OEP Capital to produce OEP Europe's documents. By seeking OEP Europe's documents via OEP Capital, Cube is attempting an end-run around § 1782's requirement that the person from whom discovery is sought be found in the district. But Cube presents no evidence that could justify disregarding the corporate separateness as between OEP Capital and OEP Europe.

*Third*, the bulk of authority in this district has ruled against the extraterritorial application of § 1782, and the Second Circuit has stated, in dicta, that it has none. Moreover, the Supreme Court has established a strong presumption against the extraterritorial application of federal

statutes. To rebut that presumption, a federal statue must state affirmatively and unmistakably that it applies outside the United States. Section 1782 contains no such statement and, therefore, has no extraterritorial effect. Further, enforcing the Application against OEP Europe's documents would require the compulsion of many actions in the production process outside of the United States, including search, retrieval, review and transfer, which would involve an impermissible extraterritorial application of § 1782.

*Fourth*, if this Court concludes that it has statutory authority to compel foreign discovery, then it should exercise its discretion to deny Cube's request for OEP Europe's documents. Most, if not all, of the documents Cube seeks may be obtained from a party to the proceeding in Austria. Cube's proposed foreign discovery constitutes a blatant end-run around German cross-border discovery restrictions and data protection laws. And the excessive burden imposed by Cube's request on OEP Europe, given the breadth of its requests and the German language, privilege and data protection issues, should tip the scale against granting the Application as to OEP Europe's documents.

*Finally*, Cube's overbroad document requests would impose a significant undue burden on third-party OEP Capital, and the Court should exercise its discretion to limit the scope of those document requests so that the burden is proportionate to the needs of the case.

## BACKGROUND

### I. THE AUSTRIAN PROCEEDING

Cube was a minority shareholder of an Austrian entity called Constantia Packaging A.G. ("Company"). *See* Application, Dkt. No. 1, Appx. 1, Ex. A, at ¶ 10 ("Application Ex. A"). The majority shareholder in the Company is an Austrian entity called Constantia Flexibles Group GmbH ("Majority Shareholder"). *Id.* at ¶¶ 7, 9. As represented by Cube, on August 24, 2010, the Company's shareholders passed a resolution that authorized the Majority Shareholder to acquire

the minority shareholders' Company stock by way of a legal process in Austria called a squeeze-out (the "Squeeze-Out"). *Id.* at ¶ 27. Pursuant to that process, Cube and all other minority shareholders were required to surrender their shares in the Company in return for payment from the Majority Shareholder. *Id.* at ¶ 27. In the Squeeze-Out, Cube and the other minority shareholders received €47 per share. *Id.* at ¶ 28. These transactions all occurred in Austria.

On November 22, 2010, Cube commenced proceedings against the Majority Shareholder before the Commercial Court of Vienna ("Austrian Proceeding"). Application Ex. A at ¶ 29. In the Austrian Proceeding, Cube asserted that the consideration of €47 per share that the Majority Shareholder paid to Cube and to the other minority shareholders was less than the fair market value of the Company. *Id.* at ¶ 29.

## II.   CUBE'S § 1782 APPLICATION

On January 13, 2016, Cube filed an Application for an Order Compelling Respondent One Equity Partners, LLC to Provide Cube Invest GMBH with Discovery Pursuant to 28 U.S.C. § 1782. *See In the Matter of the Application of Cube Invest GmbH for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, Case No. 16-cv-266 ("First § 1782 Proceeding"), Application for an Order Compelling Respondent One Equity Partners, LLC to Provide Cube Invest GmbH with Discovery Pursuant to 28 U.S.C. § 1782, dated Jan. 13, 2016, Dkt. No. 1. In the First § 1782 Proceeding, Cube also sought discovery for use in the Austrian Proceeding. First § 1782 Proceeding, Amended Application for an Order Compelling Respondent One Equity Partners, LLC to Provide Cube Invest GmbH with Discovery Pursuant to 28 U.S.C. § 1782, dated Jan. 14, 2016, Dkt. No. 19 ("First § 1782 Application"). In connection with the First § 1782 Proceeding, the Court entered a Stipulation and Protective Order (First § 1782 Proceeding, Dkt. No. 25), and the respondent therein, Heritage PE (OEP) III, LP ("OEP III"), produced certain documentary discovery. *See* First § 1782 Proceeding, Tr. of Feb. 13, 2017 Hearing, Dkt.

No. 10 ("Feb. 13 Tr."), at p. 4.  Cube received approximately 12,000 pages from OEP III. *Id.*

Thereafter, Cube commenced the instant proceeding seeking discovery from OEP Capital that Cube alleges will be relevant to and for use in the Austrian Proceedings ("Second § 1782 Proceeding"). *See* Application Ex. A. This Court accepted the Second § 1782 Proceeding as "related" to the First § 1782 Proceeding. Cube brought the Second § 1782 Proceeding against OEP Capital specifically to obtain documents from OEP Capital's German subsidiary, OEP Europe. *Id.* at ¶¶ 22-24. With its Application, Cube filed a proposed subpoena seeking 20 broad categories of documents related generally to the Majority Shareholder and any of its subsidiaries, investments or acquisitions, and the Company and any of its parents, affiliates, or subsidiaries, for the time period September 1, 2009 through December 31, 2011 (and in some cases through the present). *See* Application, Appendix 1 ("Subpoena").

## III.  OEP CAPITAL AND OEP EUROPE

OEP Capital is a Delaware limited partnership which maintains a principal place of business in New York, New York. Application Ex. A at ¶ 5. OEP Europe is a wholly-owned subsidiary of OEP Capital. Declaration of Dunja Mauser, dated Mar. 23, 2017 ("Mauser Decl."), at ¶ 8. OEP Europe is a German Gesellschaft mit beschränkter Haftung ("GmbH"), which is essentially the equivalent of a U.S. corporation. *Id.* at ¶ 2. OEP Europe is headquartered, and has its principal place of business, in Frankfurt, Germany. *Id.* at ¶ 3.  OEP Europe is not registered with the New York Secretary of State as a foreign business, does not conduct business in New York, and does not have a license to do so. *Id.* at ¶¶ 4-5. OEP Europe does not own, lease, or control property or assets in New York, nor does it maintain employees, offices, agents, bank accounts, or phone or fax listings here. *Id.* at ¶ 6.  OEP Europe does not pay taxes, have offices, or recruit employees in New York. *Id.* at ¶¶ 6-7. No employees of OEP Europe are employees of OEP Capital. *Id.* at ¶ 8.

OEP Europe stores its hard copy documents at its office in Frankfurt, Germany. Mauser Decl. at ¶ 10. OEP Capital does not have access to OEP Europe's hard copy files. *Id.* OEP Europe outsources certain IT functions to third-party cloud providers, *i.e.*, companies that offer networked computer servers. *Id.* at ¶ 11. OEP Europe stores its non-email electronic documents on the cloud provider's servers located in Germany, and the cloud provider stores a backup copy on a server in the United States (New Jersey) for disaster recovery purposes. *Id.* OEP Capital does not have access to these documents. *Id.* OEP Europe stores its employees' email with the same cloud provider that houses its non-email electronic documents. *Id.* at ¶ 12. This email is stored on the cloud provider's servers in the United States (New Jersey). *Id.* OEP Capital does not have access to this email. *Id.* OEP Europe also archives the email of its employees with a different cloud provider in Canada for compliance purposes. *Id.* at 13. OEP Capital's Chief Compliance Officer is allowed access to the archived email for compliance purposes. *Id.*

## ARGUMENT

### I.     THIS COURT MAY NOT ORDER OEP EUROPE TO PRODUCE DOCUMENTS UNDER § 1782 BECAUSE OEP EUROPE NEITHER RESIDES NOR IS FOUND IN THIS DISTRICT

Section 1782 authorizes the district court to order a person to give testimony or produce documents only when the "person resides or is found" within the district. 28 U.S.C. 1782(a); *see Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004). If the person from whom the applicant seeks discovery is a corporation, the district court may not order that person to produce documents unless it is incorporated or headquartered in the district or has systematic and continuous local activities in the district. *See In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) The party seeking relief pursuant to § 1782 has the burden of proving that the court is authorized to grant its discovery request, including that the person from whom the application seeks discovery "resides or is found" within the district. *Id.* at 419.

Cube admits that the primary purpose of its Second § 1782 Proceeding is to obtain documents from OEP Europe. *See* Second § 1782 Proceeding, Memorandum of Law in Support of Cube Invest GmbH's Second Application for an Order to Take Discovery Pursuant to 28 U.S.C. §1782, dated Feb. 1, 2017, Dkt. No. 5 ("Mem."), at pp. 9-10; Application Ex. A at ¶¶ 22-24. But Cube cannot obtain those documents from OEP Europe under § 1782. OEP Europe is not incorporated or headquartered in New York, has no offices in New York, and does little or no business here. *See* Mauser Decl. ¶¶ 3-7. Because OEP Europe is not found in this district, this Court should deny Cube's application to obtain OEP Europe's documents for that reason alone. *See, e.g.*, *In re Godfrey*, 526 F. Supp. at 422.

## II. THIS COURT MAY NOT ORDER OEP CAPITAL TO PRODUCE OEP EUROPE'S DOCUMENTS UNDER § 1782

### A. An Applicant Cannot Circumvent The Statutory "Resides Or Is Found" Requirement By Naming The Parent Of The Foreign Entity That Possesses The Requested Documents As The Respondent

Cube's tactic of naming the parent of OEP Europe as the respondent to its Application does not obviate the statutory requirement that the entity from which discovery is sought (OEP Europe) be "found" in the district. The same tactic was tried and failed in *In re Fuhr*, No. 13 Civ. 6753, 2014 WL 11460502 (S.D.N.Y. Aug. 6, 2014). In that case, the court held that the entity from which the applicant was "actually seeking discovery" was a foreign bank, even though the applicant had named an affiliated domestic bank as the respondent. *See id.* at *3. Because the applicant failed to show that the domestic and foreign entities should be treated as one, it could not rely on the domestic affiliate to satisfy § 1782's requirements. *See id.* The Seventh Circuit reached the same conclusion in *Kestrel Coal Pty. Ltd. v. Joy Global Inc.*, where the applicant attempted to use § 1782 to obtain the documents of a foreign subsidiary through its corporate parent. 362 F.3d 401, 405 (7th Cir. 2004) (reversing order granting § 1782 application, and

noting that "[o]ne uses Fed. R. Civ. P. 34 to get documents from firms that possess them, not from their corporate affiliates"); *accord Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F.Supp. 2d 45, 57 (D.D.C. 2005) (rejecting § 1782 application seeking documents of a foreign parent corporation through U.S. subsidiary); *In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Group. LLC*, No. 14 Civ. 1801 (NRB), 2014 WL 3404955, at *5 (S.D.N.Y. July 9, 2014) (rejecting argument that foreign auditors were "found" in district because of affiliation with U.S. legal entities or location of senior officers in New York).

Cube provides no justification for disregarding the legal distinction between OEP Capital and OEP Europe, other than stating that OEP Europe is OEP Capital's "wholly-owned subsidiary" and concluding that OEP Europe's documents must be "readily available" to OEP Capital. *See* Second § 1782 Proceeding, Mem. at pp. 10, 16. But the mere fact that OEP Europe is OEP Capital's wholly-owned subsidiary is not a sufficient basis for compelling OEP Capital to produce OEP Europe's documents. *Kestrel Coal Pty. Ltd*, 362 F.3d at 403-04. While Cube attempts to conflate OEP Europe and OEP Capital, and implies that employees of OEP Europe are "affiliated" with OEP Capital and work in New York (Second § 1782 Proceeding, Mem. at p. 10), this is incorrect. *See* Dunja Decl. at ¶¶ 6-8.

As in *Fuhr* and *Kestrel*, because the documents Cube seeks are held by OEP Europe, which is neither a party to this § 1782 proceeding, nor located in this district, this Court should deny Cube's Application to obtain discovery of OEP Europe through OEP Capital.[1]

---

[1] In support of its conclusion that this Court may compel OEP Capital to obtain documents from OEP Europe through OEP Capital, Cube relies on three non-binding decisions: *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194 (11th Cir. 2016), *In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006), and *In re Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165 (S.D.N.Y. 2016). Second § 1782 Proceeding, Mem. at 15-16. This Court should decline to follow these decisions, which are against the weight of authority in this district and fail to give effect to the statutory requirement that the entity from which documents are sought resides or is found within the district. And as shown below, these decisions are erroneous for an additional reason: they compelled disclosure of documents located abroad, thus giving extraterritorial effect to § 1782. *See, infra*, Section II.B.

**B.    Section 1782 Does Not Authorize The District Court To Compel Disclosure Of Documents Located Outside Of The United States or Otherwise Regulate Extraterritorial Conduct**

"Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100 (2016). To determine whether a statute applies to conduct or things located outside of the United States, the Court first decides "whether Congress has affirmatively and unmistakably instructed that the statute will do so." *Id.* (quotation marks omitted). "When a statute gives no clear indication of an extraterritorial application, it has none." *Id.* (quotation marks omitted). Next, if the Court decides that a statute has no extraterritorial effect, it must determine what type of conduct or transaction Congress intended to regulate in enacting the statute. *See Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 266-67 (2010). If the conduct or transaction that is the object of "the statute's solicitude" took place in another country, then a court may not use the statute to regulate such conduct. *See id.* at 267.

In accordance with the presumption against extraterritorial application of statutes, numerous courts in this district have squarely held that § 1782 cannot be used to compel discovery outside the United States. Indeed, "the bulk of authority in this Circuit suggests that a Section 1782 respondent cannot be compelled to produce documents located abroad." *In re Gorsoan Ltd. & Gazprombank OJSC*, No. 13 Misc. 397 (PGG), 2014 WL 7232262, at *10 (S.D.N.Y. Dec. 10, 2014) (*quoting In re Godfrey*, 526 F. Supp. 2d at 423, quotation marks and brackets omitted); *In re Kreke Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *4 (S.D.N.Y. Nov. 8, 2013) (same); *In re Sarrio, S.A.*, No. 9-372, 1995 WL 598988, at *2 (Oct. 11, 1995), *remanded on other grounds*, *Chase Manhattan Corp. v. Sarrio S.A. (In re Sarrio, S.A.)*, 119 F.3d 143 (2d Cir. 1997); *see also, e.g., In re Fuhr*, 2014 WL 11460502, at *2; *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 n.5 (S.D.N.Y. 2006). As the Second Circuit has noted

(in dicta), "there is reason to think that Congress intended [§ 1782] to reach only evidence located within the United States." *Chase Manhattan Corp*, 119 F.3d at 147. These decisions are correct and this Court should follow them here.

1. Congress Did Not Affirmatively And Unmistakably Provide That § 1782 Has Extraterritorial Effect, And Therefore It Has None

Congress did not "affirmatively and unmistakably" provide that § 1782 has extraterritorial effect. The statute instead provides that a district court can order a "person" to give testimony or produce documents only when the "person resides or is found" within the district. Section 1782 contains no "express statement of extraterritoriality" and it is not the "rare statute" whose "unique structure" nevertheless "clearly evidences extraterritorial effect." *RJR Nabisco*, 136 S. Ct. at 2103. In *RJR Nabisco*, the Supreme Court held that the racketeering statute applied to foreign conduct because the "predicate acts" included within the definition of "racketeering activity" did expressly apply to conduct occurring outside the United States. *See RJR Nabisco*, 136 S. Ct. at 2102-103. Section 1782, by contrast, does not incorporate other statutes or rules that expressly state that they have extraterritorial effect.

Section 1782 does provide that a district court may order a person to produce documents "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). Therefore, this Court may consider whether the Federal Rules of Civil Procedure contain an express statement that they apply to exterritorial conduct, just as the Supreme Court considered the "predicate" statutes in *RJR Nabisco*. Here, the most applicable Federal Rule of Civil Procedure is Rule 45, which governs third-party subpoenas. FED. R. CIV. P. 45.

There is no language in Rule 45 amounting to an "express statement of extraterritoriality" with respect to the production of documents; Rule 45's statement that a subpoena may command a person to produce documents in its possession, custody and control is not an "affirmative and

unmistakable" statement of extraterritorial effect. *See Microsoft Corp. v. United States*, 829 F.3d 197, 208, 211-12 & n.20 (2d Cir. 2016) (finding the Stored Communications Act ("SCA") could not be used to compel cloud provider Microsoft to produce documents from a server in Ireland because neither the SCA, nor the incorporated Rule 41 of the Federal Rules of Criminal Procedure, had a clear indication of intended extraterritorial effect).[2] Further, the Second Circuit in *Microsoft* rejected the argument that there was no language in the SCA *precluding* foreign document discovery, because such an argument "stands the presumption against extraterritoriality on its head." *See id*. at 211-12 & n.20.[3]

The absence of an express statement of extraterritorial effect is dispositive, and precludes extraterritorial application of § 1782 here. This interpretation is consistent with the legislative history and the Congressional intent underlying § 1782. *See Chase Manhattan Corp.,* 119 F.3d at 147 (noting a "Senate report asserting that the amendments providing for documentary discovery under the statute were intended to aid 'in obtaining oral and documentary evidence *in the United States*.'" (*quoting* S. Rep. No. 88-1580 (1964)) (emphasis added).[4]

---

[2] The Eleventh Circuit reasoned in *Sergeeva* that § 1782 had extraterritorial application because Federal Rule of Civil Procedure 45 authorizes a court to compel production of documents located outside the United States, so long as the act of production takes place within 100 miles of the place where the person resides or works. *See* 834 F.3d at 1200. But the Eleventh Circuit ignored strong and binding presumption against extraterritoriality, the absence of any express language in either § 1782 or Rule 45 supporting extraterritorial application of §1782, and the underlying purpose of §1782. *See* Section II.B.1. & 2. *Sergeeva's* exclusive reliance on Rule 45 disregards the intent of § 1782 and depends upon an impermissible inference about what "Congress would have wanted" (*RJR Nabisco*, 136 S. Ct. at 2100 (quotation marks omitted)) based only Rule 45's traditional judicial construction, and is therefore incorrect.

[3] The Second Circuit went on to explain why Congress's use of the term "warrant" (as opposed to "subpoena") reinforced its conclusion that the SCA had no extraterritorial effect. *Microsoft Corp.*, 829 F.3d at 212-16. But this explanation should not be regarded as a suggestion that orders issued pursuant to § 1782 require production of documents stored in other countries. Indeed, the court distinguished prior precedent regarding subpoenas that were premised on the conduct of a U.S. entity or jurisdiction over conduct impacting the U.S., and explicitly stated that it "need not determine the reach of the SCA's subpoena provisions, because we are faced here only with the lawful reach of an SCA warrant." *Id.*, 829 F.3d at 215-19.

[4] Courts in this district concur. *See supra,* pp.8-9. Indeed, Professor Hans Smit, the drafter of § 1782, has made it clear that the drafters of § 1782 did not intend for the statute to be used to compel documents located in a foreign country for use in a foreign proceeding. To hold otherwise, Professor Smit warned, "could turn American courts into 'clearing houses for requests for information from courts and litigants all over the world in search of evidence to be obtained all over the world.'" *American Assistance to Litigation in Foreign and International Tribunals: Section*

2. Cube's Request That OEP Capital Obtain Documents From OEP Europe Under §
1782 Would Constitute A Prohibited Extraterritorial Application Of The Statute

After determining that § 1782 has no extraterritorial application, the Court next decides
whether Cube's request "involves such a prohibited application." *Microsoft*, 829 F.3d at 216.
Thus, this Court should determine what § 1782 does and where the primary activity that § 1782
regulates, allows, or commands takes place. *See Morrison* 561 U.S. at 273 (antifraud statute
regulated the purchase and sale of securities on domestic exchanges, and claims based on
purchase and sale of securities in Australia reflected an impermissible exterritorial application);
*Microsoft,* 829 F.3d at 220 (finding SCA was focused on protecting privacy and that invasion of
that privacy takes place where data is seized, so use of SCA to obtain warrant for data stored
outside the United States was impermissible extraterritorial application). In making these
determinations, the Court may rely on "the text and plain meaning of the statute … as well as its
framework, procedural aspects, and legislative history." *Id.* at 217.

The text and legislative history of § 1782 establish that the statute has a very specific
purpose: compelling a person within the district to produce information located in the United
States for the benefit of foreign courts or interested persons. It states in part that a district court
may order a person found within the district "to *produce* a document or other thing for use in a
proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a) (emphasis added). And
Congress intended to regulate conduct related to a document or other thing located in the United
States. *See Chase Manhattan Corp.,* 119 F.3d at 147.

Thus, the primary activity that §1782 regulates, for purposes of document discovery, is
the "production of a document or thing." The act of "producing" documents is more than just

---

*1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 11 (1998); *see also, e.g., Chase Manhattan Corp.*, 119 F.3d at 146-47; *In re Sarrio,* 1995 WL 598988, at *2; *In re Godfrey,* 526 F. Supp. 2d at 423.

handing over the document or thing.[5] Producing documents necessarily requires a number of actions, from search and retrieval of the documents, to review of the documents, to the physical transfer of documents. *See* Declaration of Sharri A. Wilner, dated Mar. 27, 2017 ("Wilner Decl."), at ¶¶ 2-8. Indeed, to require a document production absent search, retrieval, review or transfer would be virtually meaningless. The question, therefore, is whether, when ordering a respondent to produce documents pursuant to a § 1782 application, the Court is necessarily ordering a search, retrieval, review or transfer activity that must occur outside of the United States. The answer will depend on the nature of the documents, how they are stored, what is required to produce them, and by whom. With respect to Cube's Application, the answer is yes.

(a) *OEP Europe Paper Copies Of Documents Located In Germany*

OEP Europe has, in Germany, paper copies of documents that may contain information relating to the transactions at issue in the Austrian Proceeding. *See* Mauser Decl. ¶ 10. These documents are not accessible to OEP Capital. *See id*. Any order to produce these documents necessarily compels conduct outside of the United States. OEP Capital would have to direct OEP Europe or its agents to inspect the documents in Germany, select potentially responsive materials, review them to determine if they are responsive to the Application or subject to German privileges or protections, and send those materials to OEP Capital. *See Microsoft*, 829 F.3d at 229 (Lynch, J., concurring in the judgment); *see also* Wilner Decl. ¶¶ 2-8. In other words,

---

[5] The courts interpreting § 1782 have focused largely on the location of the documents, rather than where the production activity takes place. Such an analysis is consistent with *RJR Nabisco*, because when documents are located outside of the United States, the production activity necessarily must take place outside of the United States. In this case, the Court should also consider the location of the data's primary owner because OEP Europe utilizes cloud computing services. *See* Mauser ¶¶ 11-13. Cloud providers may store a customer's data almost anywhere in the world throughout the provider's network, based upon the most efficient use of resources. *See Microsoft Corp*, 829 F.3d at 229 (Lynch, J., concurring in the judgment) (citing Orin S. Kerr, *The Next Generation Communications Privacy Act*, 162 U. Pa. L. Rev. 373, 408 (2014). With regard to the use of cloud providers, location of an electronic document may have less relevance than (a) the owner of the electronic documents who is the party who must take action in order to effectuate the production of those electronic documents or (b) where the actions to search, retrieve, review or transfer the documents must take place.

"corporate employees will have to be present [and act] in the foreign location …." *Id.* Thus, requiring a corporate employee to act within a foreign jurisdiction to satisfy a demand for production of paper documents requires the producing party to engage in impermissible extraterritorial conduct.

(b) *OEP Europe Electronic Documents To Which OEP Capital Lacks Access*

OEP Europe—not OEP Capital—has custody of and access to certain non-email electronic documents and employee email accounts that may contain information relating to the transactions at issue in the Austrian Proceeding. *See* Mauser Decl. ¶¶ 11-12. OEP Europe has outsourced certain IT functions to a cloud provider, resulting in the storage of electronic documents on various different servers in different locations. *Id.* at ¶ 11. The operational file server for non-email documents is located in Germany, with a server for disaster recovery purposes located in the United States. *Id.* at ¶ 11. OEP Europe also maintains operational email servers in the United States. *Id.* at ¶ 11. OEP Capital does not, however, have access to any of these electronic documents. *Id.* at ¶¶ 11-12.

Any order to produce these documents necessarily compels conduct outside of the United States. OEP Capital would need to direct OEP Europe to order its employees or agents in Germany to locate, search, retrieve and review the documents to determine if they are responsive to the Subpoena or subject to German privileges or protections, and then send the documents to the United States. *See* Wilner Decl. at ¶¶ 2-8. Accordingly, compelling OEP Capital to direct OEP Europe to take these steps necessarily involves conduct outside of the United States and would constitute a prohibited extraterritorial application of §1782.

(c) *OEP Europe Electronic Documents To Which OEP Capital Has Access But Are Located Outside The United States*

OEP Europe also archives the email of its employees with another cloud provider, in

Canada, for compliance purposes. Mauser Decl. at ¶ 13. OEP Europe has agreed to allow OEP Capital's Chief Compliance Officer restricted access to this email for compliance purposes. *Id*. Any order compelling OEP Capital to produce OEP Europe email stored in Canada would require conduct outside of the United States. While OEP Capital may have access to the OEP Europe email in Canada for compliance purposes, locating, searching and retrieving documents stored in Canada requires exercising control over property located outside the United States—namely, the computer on which the documents reside. *See Microsoft*, 829 F.3d at 220 (retrieval of email on Ireland server took place in Ireland because "Microsoft will necessarily interact with the Dublin datacenter in order to retrieve the information for the government's benefit, and that data lies within the jurisdiction of a foreign sovereign"); *see also* Wilner Decl. at ¶¶ 2-6. The data would further need to be reviewed by German counsel for German privileges or protections prior to production. *See* Wilner Decl. at ¶ 7. Any action outside the United States that is required to produce responsive documents from the OEP Europe email in Canada would trigger an impermissible extraterritorial application of § 1782.

In sum, to the extent Cube is seeking an order to produce OEP Europe documents, it should be denied as an impermissible extraterritorial application of § 1782.

### III. ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY CUBE'S § 1782 APPLICATION AS TO OEP EUROPE'S DOCUMENTS

Even if this Court finds that § 1782 applies to OEP Europe and OEP Europe's documents, the Court should nonetheless exercise its discretion to deny Cube's Application as to OEP Europe's documents. Once the requirements of § 1782 are met, the court may exercise its discretion to order discovery under § 1782. *See In re Godfrey¸* 526 F.Supp. at 418-19. The court is not required to grant a § 1782 application simply because it has the authority to do so. *See id.*

The Supreme Court has outlined the following four factors that a district court may

consider in deciding whether to exercise its discretion: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach; (2) the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004).

In weighing these factors, the district court must take into consideration the "twin aims" of the statute. *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997). Those "twin aims" are "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* (citation omitted); *In re Kreke Immobilien KG*, 2013 WL 5966916, at *2.

A.     **Cube Seeks Discovery Of Information That Is Within the Reach Of The Austrian Court**

The first *Intel* factor requires the district court to consider whether the party from whom the information is sought or the information itself is within the jurisdiction of the foreign court. *In re Elvis Presley Enters.* LLC, 15-mc-386 (DLC), 2016 U.S. Dist. LEXIS 25136 (S.D.N.Y. Mar. 1, 2016). If the documents or testimony sought by a § 1782 application are within the foreign tribunal's jurisdictional reach, this fact should cut against allowing the discovery. *In re OOO Promnefstroy*, No. M 19-99 (RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) (first *Intel* factor weighed against production where "nearly all the documents … are also in the possession of parties to the foreign processing"); *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (denying petition on discretionary grounds where respondent was parent company of foreign defendant because "discovery is fundamentally being sought from a

participant in the [foreign] proceeding"); *In re Microsoft Corp.*, 428 F. Supp. 2d at 193-94

(finding this factor to weigh against discovery where, although respondents were not participants

in the foreign proceeding, the documents sought were available to the foreign tribunal); *Schmitz*,

376 F.3d at 85 (noting that this factor weighs against applicants who "for all intents and purposes

… seek[] discovery from … their opponent in the [foreign] litigation").

Here, many of the requested documents involve the *Respondent in the Austrian Proceeding*: the Majority Shareholder. As alleged by Cube, the *Majority Shareholder* initiated the Squeeze Out, the *Majority Shareholder* allegedly valued the minority shareholders' shares at a price below fair market value, and the *Majority Shareholder* restructured or subsequently sold certain subsidiaries of the Company. Application Ex. A at ¶¶ 25-29, 35-36, 39. In fact, the majority of Cube's requests seek analyses performed by, information about, activities conducted by, or communications with, the *Majority Shareholder* or the *Company*.[6]

Cube presents no evidence that these documents are outside the jurisdictional reach of the Austrian court, or that Cube attempted to obtain the documents from the Majority Shareholder or in the Austrian Proceedings.[7] Although Cube is not required to exhaust its remedies under Austrian law, the fact that it has not done so is significant. *In re Elvis Presley Enters. LLC*, 2016 U.S. Dist. LEXIS 25136, at *9.

Thus, the first *Intel* factor weighs in favor of denying the Application with respect to OEP

---

[6] Cube seeks documents or communications concerning, *inter alia*: (i) the value of the Company and the Majority Shareholder, and their respective subsidiaries, including financial statements (Subpoena, Request. Nos. 1, 10, 13, 18, 19); (ii) the Majority Shareholder's purchases or sales of stock in the Company, and other acquisitions or investments (Subpoena, Request Nos. 6, 11, 14, 15); (iii) minutes of meetings of the Company boards (Subpoena, Request No. 16); (iv) share purchase agreements where the Company was a buyer or seller (Subpoena Request No. 20); and (v) Majority Shareholder communications, contracts or meetings with the Company and E&Y (Subpoena, Request Nos. 3, 4, 5, 7, 12).

[7] Cube's declaration filed in support of its Application implies that such information *is* within the jurisdiction of the Austria court. *See* Second § 1782 Proceeding, Declaration of Dr. Martin Loffler in Support of Cube Invest GmbH's Second Application for an Order to Take Discovery Pursuant to 28 U.S.C. §1782, dated Dec. 21, 2016, Dkt. No. 3, at ¶ 6 ("Under Austrian procedure, there is no mechanism to effectively compel [OEP Capital] to produce the information which Cube seeks by this Application *because [OEP Capital] is not a party to the Austrian Review Proceedings*.") (emphasis added).

Europe's documents.

### B. Cube's Application Is An Attempt To Circumvent German Proof-Gathering Restrictions

The third *Intel* factor[8] instructs that a district court should be more inclined to deny a § 1782 application where it is little more than "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *Intel,* 542 U.S. at 265. The court should "be vigilant against a petitioner's attempt to "replace a [foreign] decision with one by a [U.S.] court." *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6. Section 1782 is not "a vehicle to *avoid* … an unfavorable discovery decision." *Id.* (emphasis in original) (citation omitted).

In this case, the question is not whether the Application would circumvent Austrian law (as Cube claims); it is a question of whether it is appropriate for Cube to circumvent the laws of Germany by asking this Court to order the production of German documents in the possession of a German company for use in an Austrian proceeding. It is not. *In re OOO Promnefstroy,* 2009 WL 3335608, at *10 ("[O]rdering the discovery would not 'encourage foreign countries by example,' unless that example is to aid litigants in circumventing the judicial systems of foreign countries"). Cube's Application seeks to circumvent (a) Germany's legal prohibition against pre-trial discovery among European Union Member States; and (b) Germany's data protection laws.

### 1. Cube's Application Circumvents Germany's Legal Prohibition Against Pre-Trial Discovery Among European Union Member States

The European Union has regulations governing the discovery of documents among Member States, which are binding on all Member States. *See* Foreign Law Declaration of Dr. Thomas Fischl, dated March 24, 2017 ("Fischl Declaration" or "Fischl Decl."), at ¶¶ 85-86. The European Union has enacted such regulations to facilitate coordination among its Member

---

[8] OEP Capital does not dispute that there is no evidence indicating that the Austrian court would oppose the Application. But this factor should count as "neutral or slightly favor[able]" to Cube. *In re OOO Promnefstroy*, 2009 WL 3335608, at *8.

States. *Id.* at ¶¶ 85, 87. Those regulations provide that a Member State need not comply with a request for evidence from another Member State if it would violate the first Member States laws. *Id.* at ¶¶ 88-89. A German court would not authorize a request from an Austrian court for the production of German documents for pre-trial use in an Austrian proceeding. *Id.* at ¶ 90. Given Cube's deliberate decision to seek the production of OEP Europe's documents through OEP Capital, it is clear that Cube is seeking to avoid German law and have this Court substitute its judgment for that of the German court.

2. Cube's Application Circumvents The German Data Protection Laws

(a) *The Scope of the German Data Protection Laws*

Germany has in place strict data protection laws that are designed to safeguard the rights and freedoms of individuals in their privacy. *See* Fischl Decl. at ¶¶ 16-18. Those laws require an entity that possesses personal information (the "Data Controller") to take specific steps to protect that information from unnecessary or inappropriate disclosure or use. *Id.* at ¶¶ 16-42. Personal information is broadly defined to include "any information concerning the personal or material circumstances of an identified or identifiable individual" ("Personal Data"). *Id.* at ¶ 20. Personal Data includes, for example, a person's name, date of birth, business or personal email address, street address, telephone number, passport, and social security number. *Id*. Business email necessarily contains Personal Data. *Id.* at ¶¶ 9, 67.

The German data protection laws apply to each individual's Personal Data, irrespective of the person's relationship to the Data Controller. Fischl Decl. at ¶ 21. Thus, a Data Controller must protect the Personal Data in its possession for *any* individual, including employees, former employees, counterparties, etc. (the "Data Subjects"). *Id.* at ¶ 22. The Data Controller remains responsible for the protection of the Personal Data at all times, including when it is transferred to the Data Controller's service provider or another third party. *Id.* at ¶¶ 19, 40, 43-45.

The German data protection laws also impose conditions on cross-border discovery. Fischl Decl. at ¶ 66. Those conditions, in pertinent part, are: (1) informed, freely given and written consent from each Data Subject whose Personal Data is impacted; or (2) a legal justification (i.e., either compliance with a legal obligation or based on the legitimate interests of the Data Controller as balanced against the rights of the individual) *and* an adequate level of data protection. *Id.* Violation of the German data protection laws will subject a company to administrative sanctions, including substantial fines. *Id.* at ¶¶ 47-50.

(b) *OEP Europe Cannot Comply With The German Data Protection Laws Under The Current Circumstances*

As set forth in the Fischl Declaration, the cross-border transfer of Personal Data (whether to the United States or Austria) from a German subsidiary to its parent for use by a third party in a proceeding to which neither the German subsidiary nor its parent are parties does not meet the requirements of German law. *See* Fisch Decl., *et seq.* As explained by Dr. Fischl in more detail:

- The documents at issue include email, memoranda or transactional documents that will necessarily contain Personal Data. Data protection concerns are particularly relevant for email, which will contain the Personal Data of numerous individuals, including non-employees of OEP Europe. *Id.* at ¶ 67.

- Under the circumstances, it is not feasible for OEP Europe to obtain written consent of all of the impacted Data Subjects. *Id.* at ¶¶ 68-71.

- There is no legal justification that would permit the Transfer of Personal Data to the U.S. or Austria. First, Transfer is not required to satisfy a German legal obligation, and foreign legal obligations (*i.e.*, compliance with a U.S. discovery order) do not suffice to meet the condition of compliance with a legal obligation. *Id.* at ¶¶ 72-75.

- Second, there is no legitimate interest here that outweighs the rights and freedoms of the Data Subjects. *Id.* at ¶ 75. This is particularly true where neither OEP Capital, nor OEP Europe is a party to the underlying litigation. *Id.*

- Even if the requirement of a legal justification for the transfer could be met here (it cannot), OEP Europe cannot practically meet the requirement to ensure "an adequate level of data protection." *Id.* at ¶ 76. OEP Europe does not control the parties to whom the Personal Data would be disclosed here, e.g., opposing counsel, Cube, and the Court, and cannot compel them to utilize the mechanisms approved under German

law. *Id.* at ¶ 77.[9] Further, as explained below, OEP Europe has no control over how any Personal Data will be treated in the Austrian Proceeding.

- The only possible exemption to the requirement of an adequate level of data protection is if the Transfer is necessary for the establishment, exercise or defense of legal claims before courts. *Id.* at ¶ 78. But this exemption does not apply where the Transfer from the subsidiary to the parent is not for the parent's own defense. *Id.* at ¶¶ 79-81. This scenario has been expressly considered, and rejected, by European Union authorities. *Id.* at ¶ 79.[10]

These data protection concerns come to the forefront when considering exactly what Cube is seeking to accomplish. Cube essentially seeks from OEP Europe (a) communications that took place solely between individuals in Austria and/or Germany; (b) about activities that occurred in Austria. Cube has obtained documents located in the United States from OEP III in the First § 1782 Proceeding. *See* Second § 1782 Application, Mem. at 9 & Feb. 13 Tr. at p. 4. To the extent OEP Capital has in its possession responsive documents that are not duplicative of the documents produced by OEP III, Cube will receive those documents through this proceeding.[11] What is left are documents that are in the exclusive possession of OEP Europe, *to wit*, communications among individuals in Austria and/or Germany, who could not have had any expectation that their data privacy rights might someday be abridged through a legal proceeding in the United States.[12] The protection of these individuals' privacy rights (and the production, if any, of OEP Europe's documents) is best left to the German or Austrian courts, especially where

---

[9] As a result, in order to fully comply with the German data protection laws, OEP Capital would have to redact or remove all Personal Data from every document that is produced in response to the Application, in order to ensure that no transfer of Personal Data would occur. Setting aside the enormity of such a task, redactions of this type (particularly with email) would render the documents virtually useless in the Austrian Proceeding.

[10] Further, under the German data protection laws, Personal Data stored on backups may not be processed or used for any other reason other than data recovery. Fischl Decl. at ¶ 46.

[11] OEP Capital is willing to produce its own responsive documents, if any, subject to OEP Capital's objections with respect to burden, relevance and scope, and to the extent the documents are not duplicative of information Cube has already received from OEP III in the First § 1782 Proceeding. *See* Section IV*, infra*.

[12] An analysis of the factors set forth in *Societe Nationale Industrielle Aerospatiale, et al. v. U.S. Dist. Ct. for the S.D. Iowa*, 482 U.S. 522 (1987) need not be applied in this instance, as the inquiry simply is whether circumvention of foreign laws weighs against enforcement of the §1782 application. However, based on the current facts, and as set forth in this Memorandum, the *Societe Nationale Industrielle Aerospatiale* factors clearly weigh against production.

the documents will be turned over to individuals who are not bound by the Stipulation and Protective Order entered in this action, and may lack incentives to comply with it. *See Andover Healthcare, Inc. v. 3M Company*, 817 F.3d 621, 624 (8th Cir. 2016) (upholding denial of § 1782 application to obtain documents within jurisdiction of the German court, in part because the production would include confidential information, any U.S. protective order would have limited reach and appropriate protections would be better determined by the German court).

In substance, Cube is asking this Court to compel OEP Capital to force OEP Europe to risk violation of the German data protection laws and violation of the rights of individuals in Austria or Germany in order to give documents that were never created, viewed or used in the United States to an Austrian litigant. Violation of the data privacy laws of another country would be "offensive" to that jurisdiction and, therefore, this weighs against enforcing a § 1782 application. *See In re Okean B.V.*, 60 F.Supp. 3d 419 (S.D.N.Y. 2014) (refusing to allow petitioner to use § 1782 to subvert Russian and Ukrainian confidentiality and data privacy limitations); *see also In re OOO Promnefstroy*, 2009 WL 3335608, at *9 (finding third *Intel* prong cut against discovery when documents concerned foreign companies and were "principally of a foreign nature," even if respondent had access to documents from the United States).

Ultimately, to grant Cube's Application to obtain the documents of OEP Europe through OEP Capital would run counter to the efficiency and comity goals of § 1782, and would effectively sanction forum shopping under § 1782. *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6. That is not the intent of § 1782.

Thus, the third *Intel* factor weighs against granting the Application with respect to OEP Europe's documents.

### C. The Application Is Unduly Intrusive and Burdensome

The fourth discretionary factor considers whether a § 1782 application is "unduly

intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265. In general, courts should be more inclined to grant § 1782 applications that seek specific documents, or documents related to a specific event. *See In re Kreke Immobilien KG*, 2013 WL 5966916, at *7 ("[r]ecent cases suggest that courts should be more inclined to grant applications that seek either a single document or only those documents relating to a particular event"); *see also In re OOO Promnefstroy*, 2009 WL 3335608, at *9 (petitioner's application for broad discovery bore "little resemblance to those cases in which such applications were routinely approved—cases requesting a single document or report, or even those documents relating to a single transaction or event").

More expansive requests, however, have been carefully scrutinized. *See, e.g.*, *In re Elvis Presely Enters. LLC*, 2016 U.S. Dist. LEXIS 25136, at *15 (request for 14 categories of information, many of which were only minimally relevant, would impose a "heavy burden" on respondent); *In re MT "Baltic Soul" Produktentankschiff-Ahrtsgesellschaft mbH & Co. KG,* No. 15 Misc. 319 (LTS), 2015 U.S. Dist. LEXIS 136080, at *7 (S.D.N.Y. Oct. 6, 2015) (requests for information about every financial transaction the respondent companies had engaged in "swe[pt] far too broadly to be proper for [the] limited purpose" identified in the application).

Cube here has made a breathtakingly expansive request. It identifies twenty categories of documents spanning a nearly two-and-a-half year time period (and, for some requests, a seven-and-a-half year time period) seeking information regarding virtually anything to do with the Majority Shareholder or the Company. Specifically, the Subpoena seeks, *inter alia*, all documents or communications concerning:

- The Company and any of its subsidiaries, including valuation, compensation, investments in or stock acquired by the Company, sales of the Company or its subsidiaries, and meetings about the Company (Subpoena, Request Nos. 1, 2, 6, 8, 10, 13, 16, 17, 18, 29);

- The Majority Shareholder and all of its subsidiaries, investments, acquisitions (Subpoena, Request Nos. 11, 13, 14, 15); and

- Communications between or among OEP Capital or any of its affiliates, and the supervisory board of the Company, any Company shareholder, agent, affiliate or advisors of Company shareholders, E&Y or the Wendel Group (Subpoena, Request Nos. 7, 12).

Cube makes no attempt to focus on information specific to what Cube identifies as the topic to the Austrian Proceedings, i.e., the August 2010 Squeeze Out. This is an unreasonable demand to make of a third-party, be it OEP Capital itself or OEP Europe.

Respondent notes that this Court has already presumptively limited the scope of Cube's request in some respects, consistent with the Court's ruling in the related First § 1782 Proceeding.[13] *See* Second § 1782 Proceeding, Feb. 13 Tr. at p. 12. The Court's prior ruling restricts the relevant time period to July 2009 through December 2010, and excludes the production of any documents relating to the post-Squeeze Out transactions. *See* First § 1782 Proceeding, Tr. of May 6, 2016 Hearing, Dkt. No. 36, at pp. 4-5; *see also* First § 1782 Proceeding, Letter from G. Gould on behalf of OEP III, dated Apr. 22, 2016, Dkt. No. 32. Yet even with these limitations, the breadth and generic nature of Cube's request is unduly burdensome and beyond what should be requested of a third-party.

Beyond the expansive scope of Cube's request, the burden associated with the mechanics of implementing the request would be significant. *First*, with respect to the documents of OEP Europe, OEP Europe would have to (at a minimum) locate, collect and review the documents and then ship them to OEP Capital to be turned over to Cube's counsel, who would then take the documents to Austria. To the extent § 1782 values efficiency, allowing Cube's request would be contrary to that goal.

*Second*, review of the purely German documents itself presents a significant burden. Such review involves: (a) review of documents in German; (b) the implication of German

---

[13] In the February 13, 2016 hearing, the Court stated that the extent either party sought to expand or narrow the scope of that ruling, the burden would be on the party seeking the change to justify the request. Second § 1782 Proceeding, Feb. 13 Tr. at p. 11. To the extent Cube seeks to expand this ruling, OEP Capital reserves all rights and objections with respect to any such expansion.

privileges or protections (beyond data protection); and (c) data protection concerns. This would involve, *inter alia*, engaging German speakers to conduct the review of German language documents, engaging German counsel to review, and redact where required, for German privileges or protections (including data protection), and potential translation of German language documents to enable U.S. counsel to validate compliance. *See also* Fischl Decl. at ¶¶ 59-65. Each of these steps adds to the burden and expense that would be imposed on a third-party in an effort to comply with the Subpoena.

Thus, the fourth *Intel* factor weighs against granting the Application with respect to OEP Europe's documents.

## IV. THE COURT SHOULD EXERCISE ITS DISCRETION AND LIMIT THE REQUESTED DISCOVERY AS TO OEP CAPITAL

For the reasons set forth above in Section III, the Court should exercise its discretion to narrow the scope of the Subpoena as to OEP Capital. Courts are granted wide discretion to tailor discovery under § 1782. *See In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996). Even in the absence of the complications associated with cross-border discovery, the breadth of Cube's request would impose a significant burden on third party OEP Capital that is disproportionate to the value of that information to the Austrian Proceedings, particularly as most of the requests are irrelevant to the only issue in the Austrian Proceeding, i.e., whether the valuation of the minority shareholders' shares was adequate.[14]

OEP Capital thus respectfully requests that the Court narrow the Subpoena in *at least* the following ways:

- Maintain the Court's prior ruling limiting the applicable time period and excluding documents related to the post-Squeeze Out transactions;

---

[14] If the Court does not deny Cube's request for OEP Europe's documents, for the reasons set forth above in Section III, OEP Capital respectfully requests that the Court also exercise its discretion to narrow the scope of the Subpoena with respect to OEP Europe's documents as set forth in this Section IV.

- Exclude documents that are duplicative of documents Cube has already received in the First § 1782 Proceeding;

- Exclude documents that may be obtained from the Majority Shareholder;

- Exclude documents relating to the Company's subsidiaries, the Majority Shareholder's subsidiaries except the Company, and the Majority Shareholder's investments or acquisitions except as relates to the Company; and

- Limit discovery solely to specific documents Cube needs for the Austrian Proceeding, i.e., as regards the Squeeze Out and pre-Squeeze Out valuation of the Company.

## CONCLUSION

Accordingly, the Court should deny Cube's Application as to OEP Europe and OEP Europe's documents, and the Court should limit the scope of Cube's Subpoena as to OEP Capital.

Dated:  March 27, 2017
New York, New York

**REED SMITH LLP**

By:    */s/ Anthony J. Diana*
Anthony J. Diana
Therese Craparo
Zalika T. Pierre

599 Lexington Avenue, Floor 22
New York, NY  10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
adiana@reedsmith.com
tcraparo@reedsmith.com
zpierre@reedsmith.com

*Attorneys for Respondent*
*OEP Capital Advisors, L.P.*