UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                            :
IN THE MATTER OF THE APPLICATION                            :
OF CUBE INVEST GmbH FOR AN ORDER                            :    No. 17 MC 36 (DLC)
TO TAKE DISCOVERY PURSUANT TO 28                            :
U.S.C. §1782                                                :    **ORAL ARGUMENT**
                                                            :    **REQUESTED**
                                                            :
-------------------------------------------------------------x

# CUBE INVEST GmbH's REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SECOND APPLICATION FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

>EATON & VAN WINKLE LLP
>Edward W. Floyd
>3 Park Avenue
>New York, New York 10016
>
>212.779.9910
>
>efloyd@evw.com
>
>*Attorneys for the Applicant Cube Invest GmbH*

# **TABLE OF CONTENTS**

                                                                                                          **Page(s)**

I.       PRELIMINARY STATEMENT……………………………………..…….3

           Procedural Background ……………………………..…………….…….3

II.      ARGUMENT ..…………………………………………………………..5

           A. All Responsive Documents in OEP Capital's
           *Possession* Should be Produced ………………………....……………..……..….5

           B. The discovery sought by Cube does not implicate
           an impermissibly extraterritorial act, and it is premature
           to determine the extent to which some documents
           might trigger comity considerations relating to Germany's
           data privacy laws ..…………………………………………………………...14

     III.    CONCLUSION…..………………………………………………………17

Applicant Cube Invest GmbH ("Cube") respectfully submits this memorandum of law, together with the accompanying Declaration of Dr. Wulf G. Hauser and all papers previously filed herein by Cube, in further support of its Second Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 (the "Application").[1]

## I. PRELIMINARY STATEMENT

### Procedural Background

As is more fully set forth in the Cube's Second Application and in the Proschofsky Declaration, Cube is an Austrian company which was a minority shareholder in an entity formerly known as Constantia Packaging AG ("CPAG"). On August 24, 2010, CPAG's majority shareholder forced the minority shareholders to sell their stock by way of a procedure known as a "Squeeze Out." (Proschofsky Decl. ¶¶ 3, 10) The majority shareholder was an Austrian entity called Constantia Flexibles Group GmbH (f/k/a Constantia Packaging GmbH; f/k/a Sulipo Beteiligungsverwaltungs GmbH) (the "Majority Shareholder"). (Proschofsky Decl. ¶ 8)

Cube received €47 per share by way of that forced transaction, and, soon thereafter (namely, November 22, 2010), it commenced proceedings in Austria (the "Austrian Review Proceedings") contending that the compensation was not fair and reasonable as required under Austrian law. The Majority Shareholder is the respondent to those proceedings. (Proschofsky Decl. ¶ 12) Moreover, *at the time of the Squeeze Out*, the Majority Shareholder's corporate

---

[1] Papers previously filed by Cube, and referenced herein, include: (i) Cube's Second Application, filed February 1, 2017 (Dkt. No. 1) (the "Application"); (ii) Cube's Memorandum of Law in Support of the Second Application (Dkt. No. 5) (the "Supporting Memorandum"); (iii) the Declaration of Dr. Alexander Proschofsky (Dkt. No. 4) (the "Proschofsky Declaration"); and (iv) the Declaration of Dr. Martin Löffler (Dkt. No. 3) (the "Löffler Declaration"); and the Declaration of Edward W. Floyd (Dkt. No. 2) (the "Floyd Declaration").

parent was a private equity group known as One Equity Partners (the "OEP Group"). (Proschofsky Decl. ¶ 14)

In order to obtain discovery of evidence for use in the Austrian Review Proceedings, Cube commenced a prior Section 1782 proceeding in this Court bearing Docket No. 16-cv-266 (DLC) (the "First Proceeding"). That First Proceeding obtained some documentary discovery from the respondent which appeared in the First Proceeding, Heritage PE (OEP) III, L.P. ("OEP III").

Cube's Second Application seeks discovery from a separate entity, respondent OEP Capital Advisors, L.P. ("OEP Capital"), inclusive of all documents in OEP Capital's possession, custody or control which may be relevant to the Austrian Review Proceedings. OEP Capital has, in part, opposed that request, and the positions it has taken fall within two, primary categories.

First, OEP Capital has concedes that "[t]o the extent OEP Capital has in its *possession* responsive documents that are not duplicative of the documents produced by OEP III, Cube will receive those documents through this proceeding." (OEP Capital's Opposition Memo. [Dkt. No. 22] at 20 and n.11 [emphasis added]) As to production of materials within its possession, OEP Capital limits its opposition to contending that the production should be tailored to account for burden, relevance and scope. As is further discussed below, the discovery sought by Cube is highly relevant to the Austrian Review Proceedings, its production would cause minimal burden (particularly in light of the significant issues at stake), and all of it is clearly within the permissible scope.

Second, OEP Capital admits that it has a wholly-owned, German subsidiary called OEP Europe GmbH ("OEP Europe"). (Mauser Decl. [Dkt. No. 19] ¶ 8) Likewise, while OEP Capital

repeatedly contends that it lacks "access" to OEP Europe's files (Mauser Decl. ¶¶ 10-12), other than "restricted access" to emails archived with a cloud provider in Canada (Mauser Decl. ¶ 13), it tacitly acknowledges that it has control over OEP Europe's hard-files and electronic files. (OEP Capital Opposition Memo. at 12 ["OEP Capital would have to *direct* OEP Europe or its agents to . . . send those materials to OEP Capital."] [emphasis added]).

With respect to responsive documents possessed by its wholly-owned subsidiary, OEP Capital thus argues that: (a) Section 1782 does not authorize extraterritorial discovery; and (b) causing OEP Capital to produce any documents from OEP Europe (even those stored on servers located in the United States) would constitute an extraterritorial extension of this Court's powers. OEP Capital further argues that, alternatively, the Court should exercise discretion to deny or limit discovery as to any documents possessed by OEP Europe notwithstanding OEP Capital's control over the former.

As is further discussed below, persuasive authority supports that Section 1782 has extraterritorial reach. Even if it did not, an order granting the instant discovery request would not constitute an extraterritorial act. Additionally, OEP Capital's arguments concerning discretion are overstated.

## II. ARGUMENT

**A. All Responsive Documents in OEP Capital's *Possession* Should be Produced.**

As the Supreme Court held in *Intel v. Advanced Micro Systems, Inc.*, 542 U.S. 241, 244-46 (2004), district court have authority to order discovery pursuant to Section 1782 where: (i) discovery is sought for use in a foreign tribunal; (ii) the person from whom discovery is sought is found or resides within the district where the application is made; and (iii) the party seeking

discovery is a foreign tribunal or an interested person in the foreign proceeding. Here, separate from OEP Capital's arguments which solely pertain to discovery of documents said to be in OEP Europe's possession, there is no argument (nor could there be) that Cube's application does not satisfy the statutory requirements. The Austrian court is obviously a foreign tribunal, OEP Capital is headquartered in Manhattan, and Cube is a party to the Austrian Review Proceedings.

The papers which Cube initially filed and served in this matter also set forth how its application comports with all discretionary factors. (Cube's Supporting Memo. of Law at 12-16. Those discretionary factors (hereinafter, the "*Intel* factors") look to; (i) "whether the person from whom discovery is sought is a participant" in the foreign proceeding; and (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the" foreign jurisdiction's receptivity to US judicial assistance. *Intel*, 542 US at 264-65 (also observing that "a district court could consider whether the . . . request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States . . . [and that] unduly intrusive or burdensome requests may be rejected or trimmed." Furthermore, "district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts....'" *In re Application of Metallgesellschaft AG*, 121 F.3d 77 (2nd Cir. 1997) (quoting *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 [2d Cir.1992]). None of those discretionary factors apply here, and the authorizing the discovery of documents in OEP Capital's possession would advance the statute's 'twin aims.'

With respect to the first *Intel* factor, it is indisputable that OEP Capital is not a party to the foreign proceeding such that this factor weighs in Cube's favor. Unable to overcome that

hurdle, OEP Capital contends that, because "many of the requested documents *involve*" the Majority Shareholder, then perhaps those documents *might* be within reach of the Austrian court. (OEP Capital Opposition Memo. at 16) That is, on its face, pure speculation without any evidentiary support. To the extent that the Majority Shareholder was nothing more than a holding vehicle during the time in question surrounding the Squeeze Out, the far more likely scenario is that responsive documents would be in the possession, custody or control of the entities which stood behind that holding vehicle.

More importantly though, the express focus of the first *Intel* factor is on whether the respondent to the Section 1782 proceeding is a party to the foreign proceeding. OEP Capital's reliance on *In re Elvis Presley Enters.*, *LLC*, 15-mc-386, 2016 WL 843380 (Mar. 1, 2016) is not to the contrary. There, the respondent to a Section 1782 application was, at the time of the application, the parent company of a party to the foreign proceeding. *Id.* at *3 ("Although SME is not a party to the German proceeding, Arista is its wholly-owned subsidiary. As such, Arista has access to the documents and information held by SME. Indeed, SME provided information to Arista to enable Arista to comply with the German judgment of July 2013."). Here, it is understood that OEP Capital is no longer affiliated with the Majority Shareholder since it previously exited from that investment.

The bottom line is that OEP Capital is not, in any way, a party to the Austrian Review Proceeding, and the first *Intel* factor therefore weighs in favor of granting the discovery which Cube seeks.

With respect to the second *Intel* factor, OEP Capital concedes "that there is no evidence indicating that the Austrian court would oppose the Application." (OEP Capital Opposition

Memo. at 17 n.8) This factor therefore also weighs in favor of granting the discovery which Cube seeks.

With respect to the third *Intel* factor, OEP Capital does not make any argument that Cube's application seeking discovery of documents which *are within OEP Capital's possession* could conceivable constitute an attempt to circumvent foreign proof-gathering restrictions. All arguments concerning that factor are exclusively directed towards the issue of documents held by OEP Capital's wholly-owned subsidiary, OEP Europe. The third *Intel* factor therefore also weighs in favor of granting the discovery which Cube seeks

With respect to the fourth *Intel* factor, because OEP Capital cannot contradict the conclusion that Cube's application satisfies all statutory requirements, and that the first three factors weigh entirely in Cube's favor, it solely relies upon the last factor and proposes that "the Court should exercise its discretion to narrow the scope of the Subpoena as to OEP Capital." However, OEP Capital arguments are unavailing.

As a preliminary matter, as previously argued by Cube in its initial memorandum (Cube Supporting Memo. at 15), and uncontested by OEP Capital, the respondent has the burden to establish that compliance would be unduly burdensome. *See In re Ex Parte Application of Kleinmar N.V.*, 16-mc-355, 2016 WL 6906712, *3 (S.D.N.Y. Nov. 16, 2016) (respondent in a Section 1782 matter moved to quash a subpoena) (holding that the respondent "as the movant, carries the burden of proving that the [applicant's] subpoena impose[s] an undue burden on [it] as a non-party . . . [it] cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden . . . and the probable

negative consequences of insisting on compliance.") (quoting *Usov v. Lazar*, No. 13–cv–818, 2014 WL 4354691 [S.D.N.Y. Aug. 22, 2014]).

Courts have also held that, in the Section 1782 context, when:

> evaluating whether a discovery request is "overbroad or unduly burdensome," the district court should "apply[ ] the familiar standards of Rule 26 of the Federal Rules of Civil Procedure" . . . [wherein] Rule 26(b)(1) provides that the scope of discovery is limited to "relevant" material that is "proportional to the needs of the case ... and whether the burden or expense of the proposed discovery outweighs its likely benefit" . . .

*In re Application of Elvis Presley Enterprises LLC*, 2016 WL 843380, *5 (quoting *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015).

Here, OEP Capital's erroneous argument is that discovery of documents which it possesses should be tailored because "Cube's request would impose a significant burden . . . that is disproportionate to the value of that information to the Austrian Proceedings, particularly as most of the requests are irrelevant to the only issue in the Austrian Proceeding, i.e., whether the valuation of the minority shareholders' shares was" fair and reasonable. (OEP Capital Opposition Memo. at 24)

The accompanying Hauser Declaration conclusively demonstrates that OEP Capital's foregoing assertion is wrong.[2]

For instance, OEP Capital proposes that the Court should limit the applicable time period and exclude documents related to post-Squeeze Out transactions. For ease of reference, the time

---

[2] Cube has submitted a copy of the Hauser Declaration to the Court in connection with a request for authorization to file it under seal or with redactions on account of its inclusion of exhibits which were designated as confidential by the respondent in the First Proceeding. A complete copy of that declaration has been served on counsel for OEP Capital concurrent with the April 12, 2017 submission of the sealing application.

{00079235.DOCX;1}  9

period covered by the document requests annexed to Cube's application seek documents (save for a single request) running through the (short) one-and-a quarter year period of September 1, 2009 through December 31, 2011.  Also, all of the categories of document requests seek materials from that period which directly pertain to the Squeeze Out, the fair and reasonable valuation of CPAG, and the circumstances which surrounded plans for the Squeeze Out.

The Hauser Declaration sets forth a thorough and compelling demonstration that all such categories of document requests are, in fact, highly relevant to the Austrian Review Proceedings, and, while valuation is the ultimate issue therein, there are multiple, subsidiary and related issues to be addressed.

For instance, documents obtained through this application could be used by Cube to argue what particular type of valuation method would be most applicable to CPAG.  "Austrian law does not mandate that a court, or an expert appointed by a court, apply a particular valuation method when determining what the fair and reasonable share price paid for a Squeeze Out should be . . . that determination is left to the discretion of the expert, and ultimately the court." (Hauser Decl. ¶ 7)  "Various methods can be used ranging from sum-of-the-parts to discounted cash flow to other approaches." (Hauser Decl. ¶ 11)  The parties can also "rely upon any relevant facts to support their respective position as to what method(s) should be employed" for the valuation. (Hauser Decl. ¶ 12)  Accordingly, a wide range of information and data, including information pertaining to subsidiaries and divisions for purposes of a sum-of-the-parts valuation, is relevant.

Additionally, the Hauser Declaration flatly contradicts any contention that documents which post-date the Squeeze Out are not relevant to the Austrian Review Proceedings.  In that regard, the declaration provides an extensive discussion of the so-called *Wurzeltheorie* (or root-

theory). That is a legal doctrine recognized by Germany's Supreme Court, and German legal authorities can be relied upon in Austrian matters. Indeed, "Austrian courts will view German authorities and doctrines as . . . persuasive authority," and will view doctrines "pronounced by that country's Supreme Court . . . as highly persuasive." (Hauser Decl. ¶ 15) As the Hauser Declaration explains:

> Pursuant to the *wurzeltheorie*, post-resolution [i.e., Squeeze Out resolution] developments are to be considered if they are based on circumstances relating to the company which were foreseeable, or reasonably foreseeable, prior to the squeeze out resolution dates, i.e., the valuation date, or if the subsequent developments have their root in circumstances which already existed prior to the valuation date."

(Hauser Decl. ¶ 16) Dr. Rabel, the expert appointed by the Gremium to carry out the concerned valuation review, already applied the *wurzeltheorie* in a Supplemental Expert Opinion of May 29, 2015 wherein he stated, as translated into English, that:

> From this it can be concluded that there is a prohibition to include capital expenditures which lead to structural changes to the extent they have not been started or are not sufficiently concrete on the valuation date [or, *e contrario*, that if started or sufficiently concrete they are to be included]. In contrast thereto, capital expenditures which are to be expected and which do not lead to structural changes, like additions to capacity of existing production areas, are to be included into the valuation irrespective of whether they have been started or are sufficiently concrete on the valuation day or not.

(Hauser Decl. ¶ 20) The Hauser Declaration further observes that particular allegations raised in the Austrian Review Proceedings "logically and compellingly underscore[] the applicability of an expansive approach to the" *wurzeltheorie's* use in that case. (Hauser Decl. ¶ 21) The declaration proceeds to describe those allegations (Hauser Decl. ¶¶ 23-44) and how they confirm the proposition that, pursuant to the *wurzeltheorie*, "the post squeeze out divestitures and restructurings of CPAG's three business lines are highly relevant to the Austrian Review

Proceedings, and documents concerning such divestitures could be used in those proceedings." (Hauser Decl. ¶ 45)[3]

Thus, the foregoing (all of which is more fully set forth in the Hauser Declaration) strongly contradicts OEP Capital's suggestion that the Court should limit "the applicable time period and exclud[e] documents relating to the post-Squeeze Out transactions." (OEP Capital Opposition Memo. at 24) All of those documents, running throughout the requested time frame (and even beyond) are highly relevant to the Austrian Review Proceedings for purposes of, amongst other things, determining the CPAG's fair and reasonable valuation. They are also relevant to determining which valuation method, or combination thereof, would best suit the matter.

Equally misplaced is CPAG's argument that the Court should "[e]xclude documents relating to the Company's subsidiaries, the Majority Shareholder's subsidiaries except the Company, and the Majority Shareholder's investments and acquisitions except as relate to the Company." All of the categories of document requests made by Cube relate, in varying ways to information that is relevant to determining whether the Squeeze Out was fair and reasonable to the minority shareholders, what the proper valuation of their shares should be, and by what method that valuation should be conducted.

OEP Capital's other proposals for limiting the discovery are not only misplaced but impracticable and/or contrary to the law. First, as to the suggestion that the Court should exclude documents that may be obtained from the Majority Shareholder, Section 1782 does not include a

---

[3] It is also important to note the financial magnitude of the issues being addressed in the Austrian Review Proceedings. Projections are that "the compensation payable to the minority shareholders would have to be increased by at least €75,748,448." (Hauser Decl. ¶ 35)

foreign discoverability exhaustion requirement. *In re Metallgesellschaft AG*, 121 F.3d at 77 (a "'quasi-exhaustion requirement,' finds no support in the plain language of the statute and runs counter to its express purposes") (citing *In re Application of Malev Hungarian Airlines*, 964 F.2d at 100).

Furthermore, even if there were a foreign discovery exhaustion requirement, which does not exist, it would be utterly impracticable to project what documents the Majority Shareholder might or might not have, and there would be no feasible way to implement such a limitation. A similar consideration applies to OEP Capital's suggestion that the Court should exclude production of documents which "are duplicative of documents Cube has already received in the First § 1782 Proceeding." Counsel should be able, conferring in good faith, to arrange for searches to be conducted, and productions made, in an efficient manner. However, a broad, no duplication limitation would be unmanageable because Cube would not know what was being withheld. For similar reasons, OEP Capital's suggestion that the Court should limit discovery to specific documents would place Cube in the impossible position of having to guess the precise description of documents possessed by OEP Capital.

The fact that OEP Capital has presented each of the foregoing, proposed limitations in a generic manner, without any explanation of how the limitations would be defined and implemented in practice underscores that these are not legitimate concepts. As noted above, it is fully expected that counsel would meet-and-confer to coordinate discovery in good faith. However, Cube's application satisfies all of the statutory requirements for obtaining discovery of documents possessed by OEP Capital, and all of the discretionary *Intel* factors weigh in Cube's favor. Therefore, Cube respectfully submits that the Court should issue an order granting Cube's application and that it should not be required to enter into the discovery process subjected to

unwarranted limitations, particularly given the significance of the issues being addressed in the Austrian Review Proceedings coupled with the uncontroverted relevance of the materials which it seeks.

### B. The discovery sought by Cube does not implicate an impermissibly extraterritorial act, and it is premature to determine the extent to which some documents might trigger comity concerns relating to Germany's data privacy laws.

OEP Capital appears to agree that there is no controlling case law within the Second Circuit concerning the extraterritorial reach of Section 1782. OEP Capital also appears to agree that there is no controlling case law determining whether an order, directing a respondent that is found within the district to produce documents which are in the possession of an overseas subsidiary, would constitute domestic or extraterritorial conduct (particularly where concerned electronic servers are located in the US [OEP Capital Opposition Memo. at 5]).

Cube respectfully submits that the Eleventh Circuit Court of Appeals correctly addressed this issue in its recent decision in *Sergeeva v. Tripleton International Limited*, 15-13008 and 15-15066, 2016 WL 4435616 (11th Cir. Aug. 23, 2016). There, the respondent argued that "§ 1782 does not reach 'documents *located in foreign countries*' because 'American courts were not intended to serve as clearing houses for requests for information from courts and litigants all over the world.'" *Id.* at *3. The Eleventh Circuit applied a *de novo* standard of review and affirmed the District Court's rejection of the extraterritoriality argument. *Id.* at *4, explaining that:

> The District Court properly began its analysis with an examination of the statutory text. The District Court noted that § 1782 "plainly says that discovery is to be produced pursuant to the Federal Rules of Civil Procedure unless otherwise limited" by court order. Noting that the Federal Rules of Civil Procedure "authorize extraterritorial document productions," the District Court concluded that § 1782 authorized it to require that Trident Atlanta produce documents in its

"possession, custody, and control," even if such documents are in the possession of [certain foreign entitities].

*Id.* (also "declin[ing] to adopt such a provincial view given that the statutory text authorizes production of documents 'in accordance with the Federal Rules of Civil Procedure.'"[4]

The *Sergeeva* Court then addressed the "control" factor for purposes of discovery which it approvingly described the District Court as having construed as "the legal right to obtain the documents requested upon demand." *Id.* at *5; *see also In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 19-MC-88, 2006 WL 3844464, *5 (Dec. 29, 2006) ("absent any express statutory language, the location of the documents at issue should at most be a discretionary consideration") (also stating, *id.* at *8, that "[t]he fact that the documents are located abroad, itself, is of little concern. They can easily be shipped to [respondent's] headquarters in New York (or perhaps accessed electronically") (also observing, *id.* at *5, n.13, that the Second Circuit has not decided this issue and that district courts have reached varying outcomes); *In re Application of Bloomfield Investment Resources Corp.,* 315 F.R.D. 165 at 168 (S.D.N.Y. 2016) (although "[r]espondents have not offered evidence showing that the . . . documents . . . are actually located [abroad] . . . the Court notes that the location of documents abroad is not necessarily a bar to discovery.").

Here, OEP Capital does not seem to dispute that it has "control" over documents which are possessed by its wholly-owned subsidiary, OEP Europe. It, instead, repeatedly contends that it lacks "access" to certain categories of hard-copy and electronic material, while tacitly

---

[4] On the other hand, case law concerning warrants issued under different statutes, as opposed to subpoenas issued under Section 1782, is not on point despite OEP Capital's reliance on the same. (OEP Capital Opp. Memo. at 10 and n.3 [discussing *Microsoft Corp. v. United States*, 829 F.3d 197 [2d. Cir. 2016] ["We reject the approach . . . that would treat the SCA warrant as equivalent to a subpoena . . . [the] distinction is significant here because, unlike warrants, subpoenas may require the production of communications stored overseas," *id.* at 213.).

acknowledging that it has control over OEP Europe's hard-files and electronic files. (OEP Capital Opposition Memo. at 12 ["OEP Capital would have to *direct* OEP Europe or its agents to . . . send those materials to OEP Capital."]).

It is also important to note that OEP Capital does not seem to argue that OEP Europe's hard-copy files are covered by German data privacy laws. Its contention is that "[b]usiness email necessarily contains [protected] Personal Data." Accordingly, consistent with the foregoing authorities concerning the production of documents within a parent company's control, though in a subsidiary's possession, Cube submits that an order directing OEP Capital to produce copies of its hard-file documents responsive to the instant requests is warranted.

As to electronic materials, both email and non-email documents, it is premature to assess the extent to which Germany's data privacy laws would have bearing on such documents. Although some (but not all) business emails might contain personal data, it does not at all follow that all electronic documents would contain personal data. Under the circumstances, Cube's position is that counsel should be directed to meet-and-confer so as to discuss the types of documents in OEP Capital's control (but OEP Europe's possession) and thereby assess what may be within a reasonable scope for production.

## III. CONCLUSION

For all the foregoing reasons, Cube Invest GmbH respectfully submits that the Court should grant Cube's Second Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782.

Dated: New York, New York
April 12, 2017

                                                  EATON & VAN WINKLE LLP

By:    /s/ Edward W. Floyd
        Edward W. Floyd

        3 Park Avenue, 16th Floor
        New York, New York 10016
        Tel: (212) 779-9910
        efloyd@evw.com

*Attorneys for Applicant Cube Invest GmbH*