UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
:
: No. 17 MC 36 (DLC)
IN RE: SECOND APPLICATION OF CUBE :
INVEST GmbH FOR AN ORDER TO TAKE :
DISCOVERY PURSUANT TO 28 U.S.C. : **ORAL ARGUMENT REQUESTED**
§ 1782 :
:
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SUR-REPLY IN FURTHER OPPOSITION TO CUBE INVEST GmbH'S
SECOND APPLICATION FOR AN ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782**

**REED SMITH LLP**
599 Lexington Ave.
New York, New York 10022
(212) 521-5400
(212) 521-5450
*Attorneys for Respondent*
*OEP Capital Advisors, L.P.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

I. CUBE IDENTIFIES NO FACTS OR LEGAL AUTHORITY TO SUPPORT ITS POSITION THAT THIS COURT MAY ORDER OEP CAPITAL TO PRODUCE OEP EUROPE'S DOCUMENTS UNDER § 1782 ....................................................... 1

II. AS A MATTER OF LAW, § 1782 DOES NOT AUTHORIZE THIS COURT TO ORDER DOCUMENT PRODUCTION OUTSIDE THE UNITED STATES..................... 3

    A. Cube Fails To Rebut The Presumption Against Extraterritorial Application ................ 3

    B. Cube's Non-Binding Authorities Are Unpersuasive ........................................................ 4

III. ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY CUBE'S § 1782 APPLICATION AS TO OEP EUROPE'S DOCUMENTS ......... 5

    A. Cube Seeks Discovery Of Information Within The Austrian Court's Reach ................. 5

    B. Cube Is Attempting To Circumvent German Proof-Gathering Restrictions .................. 6

    C. Cube's Application Is Overbroad On Its Face And Would Impose A Significant Burden On OEP Capital ........................................................................................ 7

IV. THE COURT SHOULD NOT EXPAND ITS PRIOR RULING ON THE SCOPE OF DISCOVERY ............................................................................................................... 8

CONCLUSION.................................................................................................................... 10

# TABLE OF AUTHORITIES

**Federal Cases**

*DeSmeth v. Samsung Am., Inc.*,
 No. 92 Civ. 3710 (RBS)(RLE), 1998 U.S. Dist. LEXIS 1907 (S.D.N.Y. Feb. 20, 1998).......... 2

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
 No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)................................. 4, 5

*In re Bloomfield Inv. Res. Corp.*,
 315 F.R.D. 165 (S.D.N.Y. 2016) ................................................................................................ 4

*In re Elvis Presley Enters. LLC*,
 15-mc-386 (DLC), 2016 U.S. Dist. LEXIS 25136 (March 1, 2016) ..................................... 5, 6

*In re Fuhr*,
 13 Civ. 6753, 2014 WL 11460502 (S.D.N.Y. Aug. 6, 2014) ...................................................... 3

*In re OOO Promnefstroy*,
 No. M 19-99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ........................................ 5, 7

*In re Vivendi Universal, S.A. Sec. Litig.*,
  No. 02 Civ. 5571 (RJH)(HBP), 2009 U.S. Dist. LEXIS 131833 (S.D.N.Y. July 10, 2009) ..... 2

*Intel Corp. v. Adv. Micro Devices, Inc.*,
 542 U.S. 241 (2004)................................................................................................................... 6

*LG Elecs., Inc. v. Wi-LAN USA, Inc.*,
 No. 13 Civ. 2237-RA, 2014 WL 3610796 (S.D.N.Y. July 21, 2014)......................................... 4

*Mees v. Buiter,*
 793 F.3d 291, 299 n.10 (2d Cir. 2015) ....................................................................................... 6

*Microsoft Corp. v. United States*,
 829 F.3d 197 (2d Cir. 2016).................................................................................................. 3, 5

*Morrison v. National Australia Bank Ltd.*,
 561 U.S. 247 (2010)................................................................................................................... 4

*RJR Nabisco, Inc. v. European Community*,
 136 S. Ct. 2090 (2016).......................................................................................................... 3, 5

*Sergeeva v. Tripleton Int'l Ltd.*,
 834 F.3d 1194 (11th Cir. 2016) ................................................................................................. 4

*Stream Sicav v. Wang,*
 No. 12 Civ. 6682 (PAE), 2014 U.S. Dist. LEXIS 81098 (S.D.N.Y. June 12, 2014).............. 2, 3

Respondent OEP Capital Advisors, L.P. ("OEP Capital") respectfully submits this sur-reply, together with the declaration of Dr. Michael Lind, in further opposition to Cube Invest GmbH's ("Cube") Second Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 (the "Application").[1]

**PRELIMINARY STATEMENT**

In its Reply, Cube continues to press for the production of documents from OEP Capital's foreign subsidiary, OEP Europe. This Court should reject Cube's improper use of § 1782, and deny Cube's Application to discover OEP Europe's documents for several independently sufficient reasons. First, in seeking OEP Europe's documents from OEP Capital, Cube has directed its document requests to the wrong party. OEP Capital and OEP Europe are distinct corporate entities and Cube fails to show otherwise. Second, the statute on which Cube relies, 28 U.S.C. § 1782, has no extraterritorial application and cannot be used to compel production activity outside the United States. Third, even if Cube could overcome the legal impediments to its Application, this Court should exercise its discretion to deny the Application because the *Intel* factors weigh heavily in OEP Capital's favor.

In addition, the Court should abide by its preliminary ruling limiting the scope of discovery to July 2009-December 2010, and excluding documents related to post Squeeze-Out transactions, as Cube has not met its burden of showing that a modification is appropriate.

**I.    CUBE IDENTIFIES NO FACTS OR LEGAL AUTHORITY TO SUPPORT ITS POSITION THAT THIS COURT MAY ORDER OEP CAPITAL TO PRODUCE OEP EUROPE'S DOCUMENTS UNDER § 1782**

Cube does not argue that § 1782 authorizes the district court to order *OEP Europe* to produce documents. Nor could it; OEP Europe is not a person who "resides or is found" within

---

[1] Unless otherwise stated, all capitalized terms in this sur-reply have the same meaning as those used in OEP Capital's Memorandum of Law in Opposition to Cube Invest GmbH's Second Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782, dated Mar. 17, 2017 ("Opposition Memo" or "Opp. Mem."). Second § 1782 Proceeding, Dkt. No. 22.

the district. Opp. Mem. at 5-6. Nor does Cube refute the § 1782 case law rejecting attempts to use § 1782 to obtain discovery from subsidiaries or affiliates located outside the district. *Id.* at 6-7. Instead, Cube argues that its § 1782 application is proper because OEP Europe is OEP Capital's wholly-owned subsidiary, *ergo*, OEP Capital must control OEP Capital's documents. Reply at 5, 15-16. Cube's argument is contradicted by both fact and law.

OEP Capital and OEP Europe are separate and distinct corporate entities. *See* Mauser Decl. at ¶¶ 2-8.[2] OEP Capital and OEP Europe do not operate as one entity or have common employees. *Id.* at ¶ 8. OEP Capital does not have possession, custody or control over OEP Europe's email server, non-email server, or paper documents. *Id.* at ¶¶ 10-12. OEP Capital has access to only certain OEP Europe email stored by a cloud provider in Canada.[3] *Id.* at ¶ 13.

OEP Capital owns OEP Europe, but a parent does not necessarily control its subsidiary's documents. Because a parent and subsidiary are legally distinct, a document held by a subsidiary is not within the control of the parent, and therefore a parent cannot be legally obligated to produce it, unless "the intracorporate relationship establishes some legal right, authority or ability [of the parent] to obtain requested documents on demand." *Stream Sicav v. Wang*, No. 12 Civ. 6682 (PAE), 2014 U.S. Dist. LEXIS 81098, at *11 (S.D.N.Y. June 12, 2014) (quoting *DeSmeth v. Samsung Am., Inc.*, No. 92 Civ. 3710 (LBS)(RLE), 1998 U.S. Dist. LEXIS 1907, at *28 (S.D.N.Y. Feb. 20, 1998)). This is true even where the subsidiary is wholly-owned. *See In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH)(HBP), 2009 U.S. Dist. LEXIS 131833, at *25 (S.D.N.Y. July 10, 2009) (finding parent did not "control" documents in possession of subsidiary and noting "although there is no dispute that [the subsidiary] is a wholly

---

[2] Cube states that OEP Capital "does not dispute" that it controls OEP Europe's documents. Reply at 15-16. This is untrue. Further, OEP Capital's observation that the only way for it to attempt to comply with a court order directing it to produce OEP Europe's documents – which OEP Capital does not control and cannot access – is to ask OEP Europe to take action, is axiomatic, not an admission.

[3] An order directing OEP Capital to produce OEP Europe's email located in Canada would constitute an impermissible extraterritorial application of § 1782. *See* Opp. Mem. at 13-14; *supra* Section II.

owned subsidiary of [the parent], that fact is not controlling in this Circuit") (citation omitted).

The burden is on the party seeking discovery to overcome assertions that a parent corporation does not have control over its subsidiary's documents. *See Stream Sicav*, 2014 U.S. Dist. LEXIS 81098, at *12; *In re Fuhr*, 13 Civ. 6753, 2014 WL 11460502, at *2 (S.D.N.Y. Aug. 6, 2014). Cube does not meet its burden to justify disregarding the corporate separateness of OEP Capital and OEP Europe, and its Application as to OEP Europe's documents should be denied.

**II. AS A MATTER OF LAW, § 1782 DOES NOT AUTHORIZE THIS COURT TO ORDER DOCUMENT PRODUCTION OUTSIDE THE UNITED STATES**

Cube argues that the Court may compel OEP Capital to engage in production activities outside the United States by directing OEP Europe in Germany to produce documents. Reply at 5, 14-16. Even if OEP Capital had possession, custody, or control over all of OEP Europe's documents – and it does not – Cube's argument fails because, as the bulk of authority in this Circuit provides, § 1782 does not authorize this Court to order such extraterritorial production activity. Opp. Mem. at 8-9.

**A. Cube Fails To Rebut The Presumption Against Extraterritorial Application**

The presumption against extraterritorial application of federal law is "strong and binding." *Microsoft Corp. v. United States*, 829 F.3d 197, 209, 210 (2d Cir. 2016). Thus, a statute has no extraterritorial effect absent "clearly expressed congressional intent" in the statute itself or, in "rare" instances, the materials the statute incorporates. *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100, 2103 (2016). Cube does not even mention the language of either § 1782 or the Federal Rules of Civil Procedure in its Reply, much less identify any language that "affirmatively and unmistakably" instructs courts to give the statute extraterritorial effect. *RJR Nabisco*, 136 S. Ct. at 2100. Because Cube fails to rebut the presumption against extraterritorial application, its request for OEP Europe's documents fails at the outset.

Cube also fails to offer any response to OEP Capital's arguments that § 1782 focuses on document production and that an order compelling production in this case would require OEP Capital to engage in prohibited extraterritorial activities. *See* Opp. Mem. at 11-14. It merely asserts, without further explanation, that "an order granting the instant discovery would *not* constitute an extraterritorial act." Reply at 5 (emphasis added). But this "single, conclusory, one-sentence argument [is] insufficient to adequately raise an issue." *LG Elecs., Inc. v. Wi-LAN USA, Inc.*, No. 13 Civ. 2237-RA, 2014 WL 3610796, at *3 n.3 (S.D.N.Y. July 21, 2014). Because Cube's document requests would require substantial production activity to occur outside the United States, the Court should deny Cube's Application as a matter of law.

### B. Cube's Non-Binding Authorities Are Unpersuasive

Cube's conclusion that this Court may order OEP Capital to produce OEP Europe's documents rests entirely on three non-binding decisions: *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194 (11th Cir. 2016); *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006); and *In re Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165 (S.D.N.Y. 2016). *See* Reply at 14-15. These decisions are unpersuasive.

In *Sergeeva*, the Eleventh Circuit summarily dismissed the respondent's argument based on the presumption against extraterritoriality as a "provincial view." 834 F.3d at 1200. It did not mention *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), or its controlling test for determining whether a statute has extraterritorial effect. Rather, it affirmed the district court's ruling that § 1782 "authorize[s] extraterritorial document productions" on the ground that the "statutory text authorizes production of documents 'in accordance with the Federal Rules of Civil Procedure.'" *Sergeeva*, 834 F.3d at 1200 (quotation marks omitted). The Rules do not affirmatively state, however, that a litigant may compel document production activity outside the United States. And while a court might infer that Congress wanted to incorporate various judicial

constructions of Rule 45 into § 1782, inferences do not suffice. *See RJR Nabisco*, 136 S. Ct. at 2103. Accordingly, *Sergeeva* is wrongly decided.

Like the Eleventh Circuit's decision in *Sergeeva*, the district court's decision in *Gemeinshcaftspraxis* did not apply *Morrison*'s controlling test (*Gemeinshcaftspraxis* preceded *Morrison* by about four years). The district court rejected the argument that "§1782 assistance cannot extend to the production of documents located abroad" on the ground that "[t]here is no such express restriction in the statute …." *Gemeinshcaftspraxis*, 2006 WL 3844464, at *5. As the Second Circuit has subsequently stated, that argument "stands the presumption against extraterritoriality on its head." *Microsoft*, 829 F.3d at 211. Thus, *Gemeinshcaftspraxis* erred, and for its part, *Bloomfield* merely followed *Gemeinshcaftspraxis* into error.

### III. ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY CUBE'S § 1782 APPLICATION AS TO OEP EUROPE'S DOCUMENTS

Even if this Court concludes that § 1782 has extraterritorial reach, it should nonetheless exercise its discretion to deny Cube's Application as to OEP Europe's documents.

#### A. Cube Seeks Discovery Of Information Within The Austrian Court's Reach

Cube argues that the first *Intel* factor weighs in favor of granting its Application because OEP Capital is not a party to the Austrian Proceeding. Reply at 7. But *Intel* also directs courts to consider whether the discovery is within the foreign tribunal's jurisdictional reach, and thus "accessible absent resort to § 1782(a)." *In re OOO Promnefstroy*, No. M 19-99 (RJS), 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009); *In re Elvis Presley Enters. LLC*, 15-mc-386 (DLC), 2016 U.S. Dist. LEXIS 25136, at *8 (Mar. 1, 2016); *see also* Opp. Mem. at 15-16.

Most of the documents requested by Cube are within the foreign tribunal's reach because they relate to Constantia Flexibles Group GmbH (the "Majority Shareholder"), which is the respondent in the Austrian Proceeding. *See* Opp. Mem. at 16. Cube asserts that OEP Capital is "more likely" to have responsive documents than the Majority Shareholder, Reply at 7, but it

fails to explain why the Majority Shareholder would not have documents relating to *its own communications, actions and transactions*. Further, the Gremium, and the expert appointed by the Gremium, have broad authority to obtain the information necessary to perform their valuation, including information from parent companies and subsidiaries that are not parties to the Austrian Proceeding. *See* Declaration of Dr. Michael Lind in Further Support of Respondent's Memorandum of Law in Opposition to Cube Invest GmbH's Second Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782, dated Apr. 19, 2017 ("Lind Declaration" or "Lind Decl."), at ¶¶ 9-11. Non-compliance with such requests may result in fines. *Id.* at 10. Here, not only are the documents sought available upon request to the Gremium and its expert under Austrian law, the court-appointed experts – including the Gremium's expert – actually have *received* the types of documents Cube seeks, i.e., documents relating to the Majority Shareholder's valuation of Constantia Packaging A.G., including the Majority Shareholder's plans to restructure that entity. Lind Decl. at ¶¶ 12-22, 29-32.

These facts weigh against Cube's request to force OEP Europe – through OEP Capital – to identify, collect, review, redact, and produce documents that the Austrian court or the Gremium has likely already received. *See Mees v. Buiter,* 793 F.3d 291, 299 n.10 (2d Cir. 2015) (noting that requests unreasonably seeking cumulative materials provide grounds for discretionary denial); *see also In re Elvis Presley Enters. LLC*, 2016 U.S. Dist. LEXIS 25136, at *9 (stating that although § 1782 does not impose an exhaustion requirement, failure to attempt to obtain documents from parties to the foreign proceeding weighed against granting application).

### B. Cube Is Attempting To Circumvent German Proof-Gathering Restrictions

The third *Intel* factor considers whether an application under § 1782 "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 265 (2004). Cube argues

that because the Application is not an attempt to circumvent *Austrian* law, the third *Intel* factor weighs in Cube's favor. Reply at 7-8. But Cube fails to refute OEP Capital's showing that Cube's Application, if granted, would improperly circumvent *German* law. Opp. Mem. at 17-21. Cube offers no justification for its claim that it would be appropriate for this Court to interfere with Germany's sovereign authority to govern the transfer of information held by a German entity, and containing information about German individuals or companies, from Germany to Austria (or the United States).[4] *Id.* Nor does Cube identify any authority indicating that the third *Intel* factor applies *only* to circumvention of the laws of the foreign tribunal in which the underlying foreign dispute is pending.

### C. Cube's Application Is Overbroad On Its Face And Would Impose A Significant Burden On OEP Capital

Cube does not seriously contend that its Application is narrowly tailored to focus only on the specific documents needed to provide "assistance to a foreign proceeding." *In re OOO Promnefstroy*, No. M 19-99 (RJS), 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009). Nor could it. Cube's Application seeks "all documents" in 20 broad categories that include, *inter alia*, general communications with the Company (unlimited by subject), any of OEP Capital's (or any of its subsidiaries') investments, and any and all of the Constantia Packaging A.G.'s or the Majority Shareholder's investments or sales. *See, e.g.*, Subpoena, Request Nos. 2, 6, 7, 10-15, 19, 20. Instead, Cube contends generally that all of the discovery it seeks is "highly relevant" to the Austrian Proceeding. Reply at 4. Yet Cube is unable to tie this contention to any *specific* document request. The Declaration of Dr. Wulf Gordian Hauser in Further Support of Cube Invest GmbH's Second Application for an Order to Take Discovery

---

[4] Cube states that OEP Capital "concedes" that OEP Europe's hard copy documents located in Germany will not contain personal information. Reply at 16. This is false. The Foreign Law Declaration of Dr. Thomas Fischl in Support of Respondent's Memorandum of Law in Opposition to Cube Invest GmbH's Second Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782, dated Mar. 24, 2017 (Second § 1782 Proceeding, Dkt. No. 21) outlines, in detail, what constitutes "personal information" under German law and in no way limits that definition to electronic documents.

Pursuant to 28 U.S.C. § 1782 (the "Hauser Declaration" or "Hauser Decl.") does not remedy this omission.[5]

Further, Cube utterly ignores the immense burden that the collection, review and production of potentially thousands of documents, spanning a time period of more than two years, located outside the United States and likely containing privileged and personal information governed by the laws of Germany would impose on third-party OEP Capital. *See* Opp. Mem. at 23-24. Cube simply does not provide any justification for imposing on a third party the time and expense that a review of this information would entail.

## IV. THE COURT SHOULD NOT EXPAND ITS PRIOR RULING ON THE SCOPE OF DISCOVERY

Cube spends much of its Reply attempting to justify the expansive breadth of its Application. Cube fails to acknowledge that this Court has already presumptively ruled on the scope of discovery in this Second § 1782 Proceeding. And Cube presents no new information or any compelling reason to support reconsideration of the Court's prior order.[6]

In the First § 1782 Proceeding, the Court restricted the relevant time period to July 2009 through December 2010, and rejected Cube's attempt to obtain documents relating to the post Squeeze-Out transactions. *See* First § 1782 Proceeding, Tr. of May 6, 2016 Hearing, Dkt. No. 36,

---

[5] The Hauser Declaration purports to provide a description of certain allegations made by the minority shareholders in the Austrian Proceeding and certain documents obtained from OEP III in the First § 1782 Proceeding. The Hauser Declaration, however, presents an inaccurate and incomplete description of the events relating to the Squeeze-Out. *See, e.g.*, Lind Decl. at ¶¶ 26-32. OEP Capital disputes Dr. Hauser's version of the relevant events underlying the Squeeze-Out and his characterization of the documents.

[6] Cube argues that the parties should meet and confer regarding the scope of discovery. Reply at 13-14. Cube neglects to advise the Court that the parties did meet and confer, on February 17 and 27, 2017, to discuss Cube's requests and the Court's presumptive ruling. During the Feb. 17 discussion, Cube explained why it intended to seek to expand the Court's ruling to encompass documents through the end of 2011 and to include the post Squeeze-Out transactions. OEP Capital did not agree. Further, Cube's suggestion that the parties meet and confer regarding the scope of any documents to be produced by OEP Europe presupposes that OEP Capital is required to produce those documents. As OEP Capital has shown, this is not the case. Finally, the burden, scope and circumvention of foreign data protection laws – all of which Cube suggests are best addressed by the parties and not the Court – are legal factors identified by *Intel* as pertinent to the Court's consideration of whether to grant a § 1782 application.

at pp. 4-5.[7] In the Second § 1782 Proceeding, this Court held that its ruling as to the scope of discovery in the related First § 1782 Proceeding presumptively would apply. *See* Second § 1782 Proceeding, Tr. of Feb. 13, 2017 Hearing, Dkt. No. 10, at p. 12. The Court stated that a party seeking to expand or contract that ruling would bear the burden of justifying the change. *Id.* at p. 10. Thus, Cube is effectively seeking reconsideration of the Court's prior ruling with respect to the scope of discovery. Cube has not met its burden.

In the First § 1782 Proceeding, Cube argued that documents relating to the post Squeeze-Out transactions were critical to the ability of Cube, the Austrian court, and any expert to properly value the cash compensation provided to the minority shareholders. *See* First § 1782 Proceeding, Letter from S. Riback, dated Apr. 22, 2016, Dkt. No. 33 ("Riback Letter"); *see also* First § 1782 Proceeding, Letter from G. Gould on behalf of OEP III, dated Apr. 22, 2016, Dkt. No. 32. Cube's arguments in this Second § 1782 Proceeding, while presented in more detail, are virtually identical to the arguments it presented to the Court in the First § 1782 Proceeding. That is, under certain valuation theories, information relating to post Squeeze-Out transactions may be relevant to evaluating the adequacy of the cash compensation provided to the minority shareholders to the extent those transactions were contemplated and considered prior to the Squeeze-Out. Reply at 10-12. But the Court had all of this information available to it when it rendered its decision in the First § 1782 Proceeding. *See* Riback Letter at p. 2 & Ex. 1.

Further, Cube's invocation of so-called *wurzeltheorie* to encompass post Squeeze-Out documents is unavailing. Cube concedes that the valuation of Constantia Packaging A.G. as of the date of the Squeeze-Out is the "ultimate issue" in the Austrian Proceedings. Reply at 10; Hauser Decl. at ¶¶ 6, 13; *see also* Lind Decl. at ¶ 6. Cube merely contends that, based on

---

[7] In this Second § 1782 Proceeding, the date range identified by Cube is September 1, 2009 – December 31, 2011, for some documents, and September 1, 2009 – Present for others. *See* Subpoena, p. 4 and Request No. 12.

*wurzeltheorie*, transactions the Majority Shareholder contemplated, considered and valued *prior to* the Squeeze-Out should be taken into consideration when valuing Constantia Packaging A.G. as of the date of the Squeeze-Out, even if those transactions were not completed until after the Squeeze-Out. Hauser Decl. at ¶¶ 16-19. This is neither new nor revelatory. In fact, all of the experts in the Austrian Proceeding were well aware of the Majority Shareholder's plans to restructure Constantia Packaging A.G. post Squeeze-Out, received documents and information relating to those planned transactions from the Majority Shareholder, and took that information into account – as they deemed appropriate – in preparing their expert reports. Lind Decl. at ¶¶ 12-18; 29-32; 35. But *post* Squeeze-Out documents or information about those planned transactions – even when the doctrine of *wurzeltheorie* is applied – simply are not relevant to the valuation of Constantia Packaging A.G. for purposes of the Squeeze Out. *Id.* at ¶¶ 33-34. Accordingly, Cube's articulation of the *wurzeltheorie* doctrine does not justify modification of this Court's prior ruling.

Ultimately, however, the Court need not determine what the Austrian court or court-appointed expert would deem to be "relevant" to the Austrian Proceeding. The Court has already permitted Cube to obtain documents for a period of several months after the Squeeze-Out occurred (in August 2010). Cube presents no evidence to justify forcing a third party to review and produce another year's worth of documents relating to information that may or may not be relevant to the Austrian Proceedings. Accordingly, as Cube presents no compelling reason for this Court to reconsider its prior decision, the Court should deny Cube's effort to expand the scope of the Court's prior ruling.

## CONCLUSION

Accordingly, the Court should deny Cube's Application as to OEP Europe and its documents, and the Court should limit the scope of Cube's Subpoena as to OEP Capital.

Dated: April 20, 2017
New York, New York

                                      **REED SMITH LLP**

By:   */s/ Anthony J. Diana*_____
       Anthony J. Diana
       Therese Craparo
       Zalika T. Pierre

       599 Lexington Avenue, Floor 22
       New York, NY 10022
       Telephone: (212) 521-5400
       Facsimile: (212) 521-5450
       adiana@reedsmith.com
       tcraparo@reedsmith.com
       zpierre@reedsmith.com

       *Attorneys for Respondent*
       *OEP Capital Advisors, L.P.*